Robert H. LUCAS
v.
"BRINKNES" SCHIFFAHRTS GES.
FRANZ LANGE G.m.B.H. &
CO., K. G.
v.
NORTHERN METAL CO.

Dennis A. FARRO
v.
ETERNITY CARRIERS, INC.
v.
NORTHERN METAL CO.
Civ. A. Nos. 73–1120, 73–2150.

United States District Court,
E. D. Pennsylvania.
Dec. 30, 1974.

Abraham E. Freedman, Philadelphia, Pa., for Robert H. Lucas.

Arnold C. Grossman, Philadelphia, Pa., for Dennis A. Farro.

E. Alfred Smith, Philadelphia, Pa., for defendants.

James B. Doak, Philadelphia, Pa., for third party defendant.

Before LORD, Chief Judge, and LUONGO, HUYETT, District Judges.*

* A panel of three District Court judges was convened by Chief Judge Lord to consider these cases because of the number of cases pending in the Eastern District of Pennsyl-

## OPINION

HUYETT, District Judge.

Before us is a series of motions[1] in two admiralty actions arising out of shipboard injuries to longshoremen. These motions test the constitutionality of 33 U.S.C. § 905(b),[2] one of the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. as amended (Supp. II 1972).

## MOTION TO STRIKE

By a motion to strike defendant shipowners' affirmative defense denying liability under the warranty of seaworthiness, plaintiffs question the power of Congress to eliminate through § 905(b) a longshoreman's right to recover under the warranty of seaworthiness conferred on him in Seas Shipping Co., Inc. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). We deny the motion to strike.

Plaintiffs argue that Congress exceeded its constitutional authority under Article III, section 2,[3] when it eliminated the warranty of seaworthiness as a basis upon which longshoremen can recover.[4] Their argument relies heavily on the following excerpt from a passage in Panama Railway Co. v. Johnson, 264 U.S. 375, 386, 44 S.Ct. 391, 394, 68 L.Ed. 748 (1924):

[T]here are boundaries to the maritime law and admiralty jurisdiction

vania which have issues identical to the issues raised in these cases. This procedure will provide for uniformity of treatment of the issues involved even though a single district judge is not actually bound by our ruling in these cases. *See* Turner v. Transportacion Maritima Mexicana S.A., 44 F.R.D. 412, 414 n. 1 (E.D.Pa.1968).

1. In an earlier memorandum resolving another series of pretrial motions filed in these actions, Lucas v. "Brinknes" Schiffahrts Ges. Franz Lange G.m.B.H. & Co., K.G., 379 F.Supp. 759 (E.D.Pa.1974), we held that § 905(b) of Title 33, as amended, precluded any actions for indemnity or contribution by shipowners against stevedores arising out of injuries to the stevedores' employees. For a discussion of the history of the different rights and remedies treated in the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. as amended (Supp. II 1972), *see* Lucas I at 761–765.

2. 33 U.S.C. § 905(b) as amended (Supp. II 1972) reads:
(b) In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. *The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred.* The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter. (Emphasis added)

3. Article III, section 2, reads in part:
The judicial Power shall extend . . . to all Cases of admiralty and maritime Jurisdiction.

4. The Supreme Court first afforded seamen the right to recover under a warranty of seaworthiness in The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903). To recover under the warranty, however, the seaman had to establish that the shipowner had breached a duty of reasonable care and that his injury did not result from the negligence of the master or crew. In 1944, the Court transformed the liability arising from a breach of the warranty of seaworthiness into an absolute, non-delegable liability. Mahnich v. Southern S.S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944). Then, two years later the Court granted longshoremen the right to recover under a warranty of seaworthiness. Seas Shipping Co., Inc. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).

which inhere in those subjects and cannot be altered by legislation, as by excluding a thing falling clearly within them or including a thing falling clearly without.

Plaintiffs point out that this language of limitation is echoed in subsequent Supreme Court cases.[5] Such limiting language, plaintiffs contend, precludes Congress from eliminating this "most substantial and most important" admiralty remedy, the warranty of seaworthiness.[6]

Since plaintiffs rely so strongly on *Panama Railway Co. v. Johnson*, we start by examining the lengthy passage from *Panama* of which the language cited by plaintiffs comprises a sentence.

The passage begins with a long section in which the Court acknowledges the necessarily broad discretion of Congress to legislate in the area of substantive maritime law.[7] In discussing the nature of Article III, section 2, the Court states

> Although containing no express grant of legislative power over the substantive law, the provision [Article III, section 2] was regarded from the beginning as implicitly investing such power in the United States. Commentators took that view; Congress acted on it, and the courts, including this Court, gave effect to it. Practically therefore the situation is as if that view were written into the provision.

---

5. In Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932), the Supreme Court upheld the constitutionality of the original Longshoremen's and Harbor Workers' Compensation Act of 1927, 33 U.S.C. § 901 et seq. (1970). The Court quoted the following language from Chief Justice Taney's opinion in The Genesee Chief, 53 U.S. (12 How.) 443, 459, 13 L.Ed. 1058 (1851):
   But the extent of the power as well as the mode of proceeding in which [admiralty] jurisdiction is to be exercised, like the power and practice in all the other courts of the United States, are subject to the regulation of Congress, except where that power is limited by the terms of the Constitution, or by necessary implication from its language.
285 U.S. at 53, 52 S.Ct. at 293. In Detroit Trust Co. v. The Thomas Barlum, 293 U.S. 21, 55 S.Ct. 31, 79 L.Ed. 176 (1934), the Court upheld the Ship Mortgage Act, 46 U.S.C. §§ 911–984 (1970) (§ 973 as amended (Supp. I 1971)), which conferred on federal admiralty courts jurisdiction over actions to enforce the lien of a "preferred" mortgage on a ship, the term "preferred" being defined by the Act. The Court concludes a paragraph in which it outlines the broad power of Congress to determine maritime law by stating:
   But in amending and revising the maritime law, the Congress necessarily acts within a sphere restricted by the concept of the admiralty and maritime jurisdiction.
293 U.S. at 44, 55 S.Ct. at 38.

6. Plaintiffs seem to suggest that the lineage and antiquity of the warranty of seaworthiness are so compelling that Congress cannot, constitutionally, exclude it. At the risk of mentioning the obvious, we note that the Supreme Court did not feel compelled to grant even a limited right of recovery under the warranty of seaworthiness until 1903. The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903). The warranty did not apply to longshoremen, the only group to which it has been denied under § 905(b), until 1946. Seas Shipping Co., Inc. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). On a grander scale, plaintiffs suggest that there exists, and existed at the time of the adoption of the Constitution, a core of substantive maritime law, including the warranty of seaworthiness, with which Congress cannot tamper. This notion we reject. We adopt the Supreme Court's statement in The Lottawana, 88 U.S. (21 Wall.) 558, 572, 22 L.Ed. 654 (1875), that "it is hardly necessary to argue that the maritime law is only so far operative as law in any country as it is adopted by the laws and usages of that country."

7. Although there is no conflict among the Supreme Court cases on the broad discretion of Congress to enact maritime law, there is some disagreement as to where in the Constitution this power is grounded. The Court in The Lottawana, 88 U.S. (21 Wall.) 558, 577, 22 L.Ed. 654 (1875), found the source of congressional power to be Article I, section 8, cl. 3, the commerce clause. In Panama Railway Co. v. Johnson, 264 U.S. 382, 387, 44 S.Ct. 391, 68 L.Ed. 748 (1924), and Detroit Trust Co. v. The Thomas Barlum, 293 U.S. 21, 42, 55 S.Ct. 31, 79 L.Ed. 176 (1934), the Court found the source to be Article I, section 8, cl. 18, the necessary and proper clause. Finally, in O'Donnell v. Great Lakes Dredge & Dock Co., 318 U.S. 36, 39, 63 S.Ct. 488, 87 L.Ed. 596 (1943), the Court identified both the commerce clause and the necessary and proper clause as the source of congressional power.

After the Constitution went into effect, the substantive law theretofore in force was not regarded as superceded or as being only the law of the several states, but as having become the law of the United States,—subject to power in Congress to alter, qualify or supplement it as experience or changing conditions might require. When all is considered, therefore, there is no room to doubt that the power of Congress extends to the entire subject and permits of the exercise of a wide discretion.

264 U.S. at 386, 44 S.Ct. at 393. Immediately following this discussion, the Court does identify two constitutional limits on the legislative power. The first limit is the one invoked by plaintiffs—"that there are boundaries to the maritime law and admiralty jurisdiction which inhere in those subjects." *Id.* The second limit, and one the Court has acted upon, restrains Congress from enacting legislation which undermines the uniformity of maritime law and thereby contravenes the constitutional policy upon which a federal maritime law is based.

This second limit on the national Congress, and in one case on the New York legislature, led the Court to strike down several legislative schemes in a line of cases just prior to Panama Railway Co. v. Johnson. In Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L. Ed. 1086 (1917), Knickerbocker Ice Co. v. Stewart, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834 (1920), and Washington v. Dawson & Co., 264 U.S. 219, 44 S.Ct. 302, 68 L.Ed. 646 (1924), the Court declared unconstitutional under Article III, section 2, an attempt by the New York legislature and two attempts by the national Congress respectively to apply state workmen's compensation schemes to maritime injuries. The Court struck down these attempts because maritime law is constitutionally designated federal law and must be uniform wherever the Constitution reaches.

Plaintiffs do not suggest in their briefs that § 905(b) exceeds this second limit. They argue instead that denial to longshoremen of the warranty of seaworthiness exceeds the first limit, the one imposed by the inherent nature of the subject. With this theory we cannot agree. Despite the use of the conjunctive "maritime law and admiralty jurisdiction"[8] in the excerpt on which plaintiffs rely, we conclude that the language of limitation under discussion places boundaries on congressional power to expand and contract admiralty jurisdiction, not on its power to arrange and rearrange substantive maritime remedies.[9] We base our conclusion on several considerations. As we have already suggested, the language from

8. Although the *Panama* Court uses the phrase "maritime law and admiralty jurisdiction," we suspect the Court intended only to echo the constitutional phrase but inserted the word "law" for a nicer rhetorical balance. The Constitution refers only to "maritime and admiralty Jurisdiction." We cannot attribute to the Court's use of the word "law" the significance which the plaintiffs urge.

9. We do not imply here that congressional discretion to expand or contract admiralty jurisdiction is narrowly restricted. In a line of cases in the first decade of this century, Cleveland Terminal & Valley R. Co. v. Cleveland S.S. Co., 208 U.S. 316, 28 S.Ct. 414, 52 L.Ed. 508 (1908) ; The Troy, 208 U.S. 321, 28 S.Ct. 416, 52 L.Ed. 512 (1908) ; and Martin v. West, 222 U.S. 191, 32 S.Ct. 42, 56 L.Ed. 159 (1911), the Supreme Court refused recovery in admiralty when a ship or its gear caused damage to persons ashore or to shore-based property. In 1948 Congress passed the Admiralty Extension Act of 1948, 46 U.S.C. § 740 (1970), which in effect overruled this line of cases by conferring jurisdiction in admiralty for these kinds of accidents. Although the Supreme Court has never ruled directly on the constitutionality of the Act, the Court in Victory Carriers, Inc. v. Law, 404 U.S. 202, 209–210, 92 S.Ct. 418, 424, 30 L.Ed.2d 383 (1971), recounts this legal history with apparent equanimity and reports that "[t]he [Admiralty Extension Act] survived constitutional attack in the lower federal courts and was applied without question by this Court in *Gutierrez* [Gutierrez v. Waterman S.S. Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297]. . . ." (citations omitted).

*Panama Railway Co. v Johnson* that plaintiffs cite is but a short excerpt from a long passage the predominant theme of which is the broad range of congressional discretion to alter and amend maritime law. This pattern, limiting language sounding a minor theme in a case in which the major theme is the wide-ranging congressional power to enact maritime law, is repeated in Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932), and Detroit Trust Co. v. The Thomas Barlum, 293 U.S. 21, 55 S.Ct. 31, 79 L.Ed. 176 (1934), two other cases upon which plaintiffs rely. Further, in *Panama Railway Co. v. Johnson* and *Crowell v. Benson,* the Court upheld the federal legislation under constitutional attack despite thoroughgoing congressional rearrangement of substantive maritime remedies. In *Panama Railway v. Johnson* the Court upheld the constitutionality of the Jones Act, 46 U.S.C. § 688, which conferred on seamen a negligence remedy governed by "all statutes of the United States conferring or regulating the right of action for death in the case of railway employees." In *Crowell v. Benson* the Court upheld the original Longshoremen's and Harbor Workers' Compensation Act of 1927, 33 U.S.C. § 901 et seq., which created a federal workmen's compensation scheme for longshoremen. In fact, except for legislation struck down for undermining the uniformity of maritime law, plaintiffs cannot cite us a single case in which a congressional enactment of substantive maritime law was declared unconstitutional.

Finally, we note that the Supreme Court has explicitly recognized the peculiar appropriateness of the legislative process to striking the correct balance of substantive maritime remedies. In Halcyon Lines v. Haenn Ship Ceiling and Refitting Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952), the Court held that since Congress had not approved a right of contribution between shipowners and shoreside contractors, the Court could not appropriately do so. In so holding, the Court said:

> We think that legislative consideration and action can best bring about a fair accommodation of the diverse but related interests of these groups. The legislative process is peculiarly adapted to determine which of the many possible solutions to this problem would be most beneficial in the long run.

342 U.S. at 286, 72 S.Ct. at 280; accord United States v. Atlantic Mutual Insurance Co., 343 U.S. 236, 242, 72 S.Ct. 666, 96 L.Ed. 907 (1952). Our first opinion in this matter, Lucas v. "Brinknes" Schiffahrts Ges. Franz Lange G.m.B.H. & Co., K.G., 379 F.Supp. 759, 767–769 and appendix (E.D.Pa.1974), discusses at length the shifting of weights, as revealed by the legislative history, which finally struck the balance represented by the 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act. After full legislative hearings at which representatives of all interested groups testified, Congress adjusted the previous balance of remedies toward the goal of a more humane and more equitable scheme. As we found in *Lucas I,* 379 F.Supp. at 766–767, the 1972 Amendments reveal themselves as a configuration in which the stevedore is strictly liable to his employee for increased workman's compensation benefits. The stevedore, in turn, is protected against actions by shipowners for indemnity and contribution when a longshoreman is injured on the job through a shipowner's negligence. Finally, and this completes the configuration, the shipowner is no longer strictly liable to the longshoreman under the warranty of seaworthiness; only a simple, common-law negligence remedy remains available to the longshoreman against the shipowner. In light of our characterization of the 1972 Amendments, we note the recent case of Burris v. Global Bulk Carriers, Inc. (Lavino Shipping Co.),

505 F.2d 1173 (3d Cir. 1974), in which the Third Circuit, in dicta,[10] characterized the Amendments as:

> rationaliz[ing] the relative liabilities of shipowners and stevedores by replacing maritime concepts of liability with "a new cause of action for negligence in which a shipowner is not to be held liable as a third party unless the former's negligence was such as would render a land-based third party in non-maritime pursuits liable under similar circumstances" . . . .

(citation omitted).

▪ To summarize, then, we hold that in denying to longshoremen the right to recover under the warranty of seaworthiness in the 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act, Congress has exceeded its power neither under the Constitution nor under the constitutional interpretation found in *Panama Railway v. Johnson*. The caution sounded in *Panama* is against extreme congressional tampering with the boundaries of admiralty jurisdiction, either territorial or subject matter jurisdiction. We agree that Congress may not, constitutionally, bring under the jurisdiction of a federal admiralty court a completely land-based accident or transaction. Conversely, we concede that Congress cannot remove from admiralty jurisdiction those types of accidents which occur on navigable water since these are conceptually, traditionally, and constitutionally admiralty matters. This does not mean, however, that Congress may not amend or alter the substantive law of admiralty as long as it does not interfere with admiralty jurisdiction. Section 905(b) in no way encroaches upon the jurisdiction of the

admiralty court; it merely defines rules of law to be applied. More specifically, the amendment provides that liability to a longshoreman may not be based upon the breach of the warranty of seaworthiness. It does not disturb the jurisdiction of a district court to entertain a suit by an injured longshoreman. Article III, section 2, does not reach the substantive law of admiralty but only the jurisdiction and the uniform application of its laws. Section 905(b) does nothing to either.

## MOTION FOR CERTIFICATION

▪ Defendants-third party plaintiffs move that we certify the constitutional question here decided to the Third Circuit. Section 1292(b) of Title 28 provides for such a procedure but only when "there is substantial ground for difference of opinion and an immediate appeal . . . may materially advance the ultimate termination of the litigation." Since we find § 905(b) clearly constitutional, we necessarily find no "substantial ground for difference of opinion." Further, after this second long delay in the litigation occasioned by our preparing another memorandum resolving pretrial motions, we believe the best hope for "materially advanc[ing] the ultimate termination of the litigation" is to proceed with it in the district court.

## CONDITIONAL MOTION FOR RECONSIDERATION

Defendants-third party plaintiffs move that in the event we find § 905(b) unconstitutional, we reconsider our decision in *Lucas I*. Obviously, we need not reconsider.

---

10. In *Burris* the Third Circuit found that the 1972 Amendments did not apply because the accident giving rise to the action in federal court occurred prior to the effective date of the Amendments. Burris v. Global Bulk Carriers, Inc. (Lavino Shipping Co.), 505 F.2d 1173, 1178 and note 9 (3d Cir. 1974).