941 F.2d 525
 1992 A.M.C. 532
 Harry ZYCH, d/b/a American Diving & Salvage Co., Plaintiff-Appellant,
v.
UNIDENTIFIED, WRECKED AND ABANDONED VESSEL, BELIEVED TO BE
THE "SEABIRD," etc., Defendant,
and
Illinois Department of Transportation and the Illinois
Historic Preservation Society and United States of
America, Intervening Defendants-Appellees.
 No. 90-3187.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 11, 1991.
Decided Aug. 21, 1991.
 
 Paul N. Keller, Park Ridge, Ill., for Harry Zych.
 James R. Carroll, William K. Kane, Asst. Attys. Gen., Chicago, Ill., for Unidentified, Wrecked and Abandoned Vessel, Believed to be the "Seabird".
 James R. Carroll, William K. Kane, Asst. Attys. Gen., Richard Linden, argued, Office of the Attorney General, Chicago, Ill., for Illinois Dept. of Transp. and Illinois Historic Preservation Agency.
 Barbara B. O'Malley, Dept. of Justice, Torts Branch, Civil Div., Washington, D.C., for U.S.
 Lenore E. McQuilling, Walker & Corsa, New York City, for amicus curiae American Sport Divers Ass'n.
 Robert W. Gettleman, Jamie Kittel, D'Ancona & Pflaum, Chicago, Ill., Elizabeth Sherrill Merritt, Thompson McCord Mayes, Andrea C. Ferster, David A. Doheny, Nat. Trust for Historic Preservation in U.S., Washington, D.C., for amic. curiae Society of Professional Archaeologists, Society of Historical Archaeology, Advisory Council on Underwater Archaeology, Society of American Archaeology, Council of American Maritime Museums, Association for Great Lakes Maritime History, Landmarks Preservation Council of Illinois, Inc. and National Trust for Historic Preservation in the United States.
 Before CUMMINGS, CUDAHY and KANNE, Circuit Judges.
 CUMMINGS, Circuit Judge.
 
 
 1
 The prospect of raising the "Seabird," a 638-ton sidewheel steamer that has lain on the bed of Lake Michigan for the past 123 years, raises some fascinating and complex questions of admiralty law, federalism and state sovereign immunity. The issues are prematurely presented in this appeal, however, and we therefore must remand for a key factual finding.
 
 BACKGROUND
 
 2
 The Seabird's story involves neither fabulous buried treasure nor a maritime tragedy of epic proportions. Undeniably, though, there is pathos in its more ordinary tale. The Seabird, newly painted for the summer season, sailed from Manitowoc, Wisconsin, on April 8, 1868, bound for Chicago via Milwaukee, Racine and Kenosha. About one hundred passengers were aboard and each had paid a fare of one dollar. The first evening on the lake was chilly. In the early morning hours of April 9, while the Seabird was off the shore of Waukegan, a porter emptied the stove which had been warming the passengers in the main cabin. He threw the load of hot ashes off the side of the boat, but the wind blew the ashes back aboard, and some varnished tubs on deck ignited. Soon the ship was aflame. The passengers who jumped overboard perished quickly in the 36-degree water. The ship sank and only two passengers survived.
 
 
 3
 Harry Zych, who operates a commercial salvage business, found the Seabird in the summer of 1989 after ten days of diving and hours of library research. He located portions of the hull, boilers, machinery and other ship components. He filed this admiralty action in rem on August 29, 1989, naming the wreck as the defendant and representing that it was located within the territorial jurisdiction of the Northern District of Illinois. As relief, Zych sought title to the shipwreck under the law of finds or a salvage award under the laws of salvage. He asked that his title or salvage award be confirmed against "all claimants and all the world" and requested further that "all governments * * * [or] states * * * be cited to appear * * * and show cause why possession should not be delivered to plaintiff."
 
 
 4
 On November 20, 1989, the Illinois Department of Transportation ("IDOT") and the Illinois Historic Preservation Agency ("IHPA") (together "the state")[1] intervened as defendants for the limited purpose of moving to dismiss the case against the state on Eleventh Amendment grounds. The state claimed title to the shipwreck under three state statutes[2] and two federal statutes, namely the Abandoned Shipwreck Act of 1987, 43 U.S.C. § 2101 et seq. (1988), and the Submerged Lands Act, 43 U.S.C. § 1301 et seq. (1988). When in response Zych challenged the constitutionality of the Abandoned Shipwreck Act, the United States intervened to defend the statute's constitutionality.
 
 
 5
 The district judge subsequently dismissed Zych's suit. The court first held, in a detailed opinion, that the in rem action could be considered one against the state for Eleventh Amendment purposes if the state had a colorable claim to the shipwreck. The judge then examined the possible grounds for the state's claim of ownership. She found two of the state statutes invoked by the state to be inapplicable and declined to interpret the terms of the third.[3] These findings are not challenged on appeal. The judge ultimately held that the state's claim of title was colorable on the basis of the law of finds, in conjunction with the federal Submerged Lands Act ("SLA"). The law of finds, developed originally at common law and then incorporated into admiralty, gives legal force to the venerable maxim "finders-keepers." Under an exception to the rule, if a find is embedded in someone's land, the owner of the land is the keeper. Because under the SLA the owner of the lakebed is Illinois, the judge ruled that the state had colorable title to the Seabird, which she believed "likely embedded in submerged lands." Zych v. Unidentified, Wrecked & Abandoned Vessel, Believed to be SB "Lady Elgin," 746 F.Supp. 1334, 1343 (N.D.Ill.1990).
 
 
 6
 The judge ruled alternatively that the Abandoned Shipwreck Act ("ASA") supported the state's claim. By the provisions of the ASA, the United States claimed title to all shipwrecks "embedded" in the submerged lands of a state and simultaneously transferred title of those wrecks to the states in which they are located. After rejecting Zych's challenges to the constitutionality of the Act, the court found that the ASA, like the law of finds, supported the colorability of the state's claim. Because the state had a colorable claim, Zych's suit was an action against the state barred by the Eleventh Amendment. The court dismissed the suit with respect to the state. The court then dismissed the case in its entirety, finding that "further proceedings in federal court would be superfluous because the primary dispute involves the State and the State is thus an indispensable party, see Fed.R.Civ.P. 19(b)." Id. at 1351.
 
 
 7
 Zych appeals, arguing that the state has no colorable claim and thus that the Eleventh Amendment presents no bar to his suit. He notes that though the district court's holding turns on "embeddedness," the court never actually found the Seabird to be embedded. He stresses that the effect of the ruling below is to deprive him of any forum to litigate his claim. His suit in federal court was dismissed because he is unable to sue the state in federal court without contravening the Eleventh Amendment, but a state court suit is impossible because federal jurisdiction over maritime matters is exclusive. See 28 U.S.C. § 1333. Zych also renews his arguments about the constitutionality of the ASA, contending that it impermissibly interferes with admiralty jurisdiction and destroys the uniformity of admiralty law. Finally Zych asks that even if the state prevails on the above arguments, the case be remanded with instructions that the district court adjudicate his rights in the wreck with respect to parties other than the state.
 
 
 8
 We agree that the case turns on the question of embeddedness, though we interpret the relevance of this question differently than the parties or the district judge. We remand to the district court for a finding on whether the Seabird is in fact embedded and if so, whether the ASA is constitutional so as to allow its application to this case.
 
 ANALYSIS
 
 9
 Unlike the district judge, we focus exclusively on the Abandoned Shipwreck Act of 1987, 43 U.S.C. § 2101 et seq., a brief statute that has not previously been invoked or challenged in litigation. If the ASA applies to this case, and is found constitutional, it is dispositive. The ASA explicitly precludes a claimant to an "embedded" wreck from invoking the law of finds or the law of salvage. Because these are the only two admiralty causes of action stated in Zych's complaint, if the ASA constitutionally can be applied to the Seabird, Zych has simply failed to state a right to relief. The Eleventh Amendment bar is irrelevant, as is any "colorability" analysis.[4] However, as explained infra, the entry of judgment against Zych in this suit would not necessarily leave Zych without a forum in which to adjudicate his dispute. We believe the ASA, if constitutional, opens the way for a state court to determine title to the Seabird.
 
 
 10
 Congress enacted the ASA in an attempt to clear longstanding confusion over whether the states or the federal government owned and had responsibility for managing historic wrecks. The House Report noted the existing confusion:
 
 
 11
 over the ownership and authority to manage abandoned shipwrecks. States have claimed title to, and regulatory authority over, abandoned historic shipwrecks located on submerged lands under their jurisdiction. The Federal Admiralty Courts have also claimed jurisdiction over the salvage of these resources.
 
 
 12
 H.R.Rep. No. 100-514(I), 100th Cong., 2d Sess., reprinted in 1988 U.S.Code Cong. & Admin.News 365, 366 [hereinafter House Report]. While 28 states had passed legislation relating to the management of historic shipwrecks at the time the ASA was being considered, they had achieved only limited success in enforcing their laws. Id. at 366. Some federal courts had held that cases involving shipwrecks were within their exclusive admiralty jurisdiction and applied either the law of finds or the law of salvage to adjudicate the disputes before them. See, e.g., Platoro, Ltd. Inc. v. Unidentified Remains of a Vessel, 614 F.2d 1051 (5th Cir.), certiorari denied, 449 U.S. 901, 101 S.Ct. 272, 66 L.Ed.2d 131 (1980); Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel, 569 F.2d 330 (5th Cir.1978); Martha's Vineyard Scuba Headquarters, Inc. v. Unidentified, Wrecked & Abandoned Steam Vessel, 833 F.2d 1059 (1st Cir.1987). Courts also had specifically held that any applicable state regulation was pre-empted by admiralty principles. See, e.g., Cobb Coin Co. v. Unidentified, Wrecked & Abandoned Sailing Vessel, 525 F.Supp. 186 (S.D.Fla.1981), contra, Subaqueous Exploration & Archaeology, Ltd. v. Unidentified, Wrecked & Abandoned Vessel, 577 F.Supp. 597 (D.Md.1983), affirmed without opinion, 765 F.2d 139 (4th Cir.1985). Senator Bill Bradley, sponsor of the Senate bill, expressed a concern that "[u]nder the current system, Federal courts--sitting in admiralty--have substantial policymaking power, which has resulted in uneven judgments about the historical value of shipwrecks." 113 Cong.Rec. S. 3988-3989 (March 26, 1987).
 
 
 13
 Congress' answer was to assert federal ownership of certain shipwrecks and simultaneously transfer title of those wrecks to the states for administration, management and regulation. In Section 6(a) of the ASA the United States claims title to all abandoned shipwrecks either embedded in the submerged lands of a state or resting on submerged lands of a state but eligible for inclusion in the National Register of Historic Places. 43 U.S.C. § 2105(a). Section 6(c) of the ASA transfers title of the shipwrecks specified in 6(a) to the states in which they are located. 43 U.S.C. § 2105(c). Section 5 mandates that the Secretary of the Interior establish guidelines within nine months after enactment of the ASA to "assist states * * * in developing legislation and regulations to carry out their responsibilities under this Act." 43 U.S.C. § 2104(c). Congress contemplated that after promulgation of federal guidelines, states would "have jurisdiction over and management responsibility for" historic wrecks in state waters.[5] House Report at 373.
 
 
 14
 Two aspects of the ASA are especially important for our purposes. First the scope of the ASA is limited. Congress only cared to transfer ownership and ensure protection of shipwrecks of "historic significance," House Report at 365, which it estimated to be a mere five to ten percent of the 50,000 abandoned shipwrecks located in the navigable waters of the U.S. House Report at 365. In the ASA, the concept of "embeddedness" serves as a proxy for historic value. The ASA encompasses abandoned shipwrecks:
 
 
 15
 (1) embedded in submerged lands of a State;
 
 
 16
 (2) embedded in coralline formations protected by a State on submerged lands of a state; or
 
 
 17
 (3) on submerged lands of a State and * * * included in or determined eligible for inclusion in the National Register [of Historic Places].
 
 
 18
 43 U.S.C. § 2105(a). "Embedded" in turn was defined to mean:
 
 
 19
 firmly affixed in the submerged lands or in coralline formations such that the use of tools of excavation is required in order to move the bottom sediments to gain access to the shipwreck, its cargo, and any part thereof.
 
 
 20
 43 U.S.C. § 2102(a). The statute thus indicates that an embedded wreck is one that is at least partially buried.
 
 
 21
 Second, a finder of an abandoned shipwreck to which the ASA applies can no longer seek a declaration of ownership under the law of finds or a salvage award under the law of salvage. Section 7 of the Act declares "The law of salvage and the law of finds shall not apply to abandoned shipwrecks to which section 6 of this Act applies." 43 U.S.C. § 2106(a). Congress believed these admiralty principles "not well-suited to the preservation of historic and other shipwrecks to which this Act applies." House Report at 377. Senator Bradley, for example, questioned the wisdom of allowing the "finders-keepers" principle to determine the ownership of wrecks which might have considerable historical or cultural value. 113 Cong.Rec. S. 7050 (March 26, 1987). Salvage law, which apportions awards to those who rescue ships using factors such as degree of success of recovery and time and labor expended, was deemed similarly unsuited. The law did not allow a consideration of factors such as archaeological or historical value. House Report at 377. Congress thus undertook to "carve out a limited exception from general admiralty principles" for those classes of shipwrecks covered by the Act. Id.
 
 
 22
 This description of the ASA and its purposes, as gleaned from the legislative history, raises two questions to be resolved with respect to the Seabird. First, does the ASA apply to this case at all? If so, we must confront the second question: whether the scheme created by Congress--to eliminate or "carv[e] out" of admiralty a certain block of cases apparently within admiralty jurisdiction prior to enactment of the ASA--contravenes any constitutional principles.
 
 
 23
 The district judge's conclusion that the Seabird is "likely embedded" is insufficient to answer the first question. The ASA sets forth a specific definition of "embeddedness" to fulfill Congress' intention that only certain historic wrecks come within its scope. The district court should hold an evidentiary hearing to determine if the Seabird is indeed "firmly affixed" in the submerged lands of a state so as to fall within the purview of Section 6(a)(1).[6] Neither party presented the district judge with evidence below, and apparently only Zych has seen the Seabird in its present watery habitat. Zych himself can testify at the hearing on remand.[7]
 
 
 24
 If the Seabird is embedded, the constitutionality of the ASA must be decided, for it will determine Zych's ability to pursue a suit in federal court.[8] The ASA eliminates the only two admiralty grounds upon which finders of wrecks like Zych traditionally have claimed relief in federal court, the law of salvage and the law of finds.
 
 
 25
 Congressional enactments modifying substantive admiralty law can be challenged on two grounds. The Constitution extended the judicial power to "all cases of admiralty and maritime jurisdiction," U.S. Const. Art. III, § 2, and Congress, in implementing the grant of jurisdiction, made it exclusive. See 28 U.S.C. § 1333. Courts have interpreted the Constitution to allow Congress to "alter, qualify or supplement the substantive admiralty law [presumed to be in existence at the writing of the Constitution]." Panama R.R. Co. v. Johnson, 264 U.S. 375, 386, 44 S.Ct. 391, 393, 68 L.Ed. 748. This power is subject to two important limitations, however.
 
 
 26
 One is that there are boundaries to the maritime law and admiralty jurisdiction which inhere in those subjects and cannot be altered by legislation, as by excluding a thing falling clearly within them or including a thing falling clearly without. Another is that the spirit and purpose of the constitutional provision require that the enactments * * * shall be co-extensive with and operate uniformly in the whole of the United States.
 
 
 27
 Id. at 386-387, 44 S.Ct. at 393-94. Thus Congress is free to "arrange and rearrange substantive maritime remedies," Lucas v. "Brinknes" Schiffahrts Ges., 387 F.Supp. 440, 443 (E.D.Pa.1974) (three-judge court), but cannot "expand and contract admiralty jurisdiction," id., nor can it leave admiralty law non-uniform.
 
 
 28
 The district judge found that the ASA presented no serious constitutional question because it changed substantive laws without altering jurisdiction. Zych, 746 F.Supp. at 1345. She believed that Congress' elimination of causes of action based on the law of salvage and the law of finds deprived shipwreck finders of a right to relief but did not divest federal courts of jurisdiction to hear cases involving embedded shipwrecks.
 
 
 29
 The distinction drawn by the district judge cannot be supported. As we have explained, the purpose of the ASA was not simply to rearrange substantive remedies but to transfer management of and litigation over embedded shipwreck sites from the federal courts to the states. Congress set out to change the forum in which embedded shipwreck cases are heard. See House Report at 375 (contemplating that parties affected by the ASA will seek "recourse * * * provided under state law"). The provisions of the ASA explicitly direct the development of state legislation, see 43 U.S.C. § 2104, thus implicitly authorizing litigation in state courts. In short, depriving those who find embedded shipwrecks of causes of action based on the law of salvage and the law of finds divests federal courts of their admiralty jurisdiction over such claims, and concurrently vests state courts with jurisdiction over the same claims.[9]
 
 
 30
 Once it is acknowledged that the ASA alters admiralty jurisdiction, constitutionality is a trickier question than thus far has been envisioned. Changes in jurisdiction are not wholly precluded, but Congress cannot exclude from admiralty jurisdiction classes of cases previously "falling clearly within" admiralty jurisdiction. Panama, 264 U.S. at 386-387, 44 S.Ct. at 393-94. Presumably this means that Congress may clarify admiralty jurisdiction at the margins but cannot work fundamental changes. Thus it is only if cases involving abandoned shipwrecks were not clearly within admiralty jurisdiction even previous to passage of the ASA that Congress could re-draw the boundary of admiralty jurisdiction in a manner which excluded those cases from the federal courts.
 
 
 31
 The question of whether abandoned shipwreck litigation was properly, firmly within the scope of admiralty jurisdiction prior to the ASA is a close one. It can be argued that it was not. The primary focus of the jurisdiction "is unquestionably the protection of maritime commerce." Foremost Insurance Co. v. Richardson, 457 U.S. 668, 674, 102 S.Ct. 2654, 2658, 73 L.Ed.2d 300. Thus typical admiralty matters are those related to commercial vessels and those who operate them. They involve maritime contracts or torts on navigable waters. DeLovio v. Boit, 7 Fed.Cas. 418, 444 (No. 3,776) (C.C.Mass.1815) (Story, J.). Laws developed to govern maritime commerce have only been stretched to apply to litigation over abandoned shipwrecks with some imagination. The law of salvage, for example, originally developed to offer economic incentives to seamen observing ships and cargo in immediate marine peril to undertake rescue efforts. Some courts exercised admiralty jurisdiction over cases involving even long-abandoned and wrecked vessels by extending the applicability of the law of salvage, see, e.g., Cobb Coin Co. v. Unidentified, Wrecked & Abandoned Sailing Vessel, 549 F.Supp. 540, 557 (S.D.Fla.1982) (even wreck is "in peril" of being lost through the action of the elements). Others thought the link too tenuous. See, e.g., Treasure Salvors, 569 F.2d at 337 (application of salvage law to shipwreck "stretches a fiction to absurd lengths"). As to the law of finds, courts disagree about whether it is admiralty law at all.[10] Thus it is possible to read the ASA as Congress' legitimate expression of a preference that abandoned shipwreck cases be treated as non-admiralty, made in response to questions about jurisdiction raised but not settled by the federal courts.
 
 
 32
 On the other hand, it can persuasively be argued that federal jurisdiction over abandoned shipwreck cases was unquestioned before passage of the ASA. The Supreme Court implicitly accepted the existence of such jurisdiction. See Florida Dept. of State v. Treasure Salvors, Inc., 458 U.S. 670, 102 S.Ct. 3304, 73 L.Ed.2d 1057. Federal courts rarely dismissed shipwreck cases altogether for want of jurisdiction, typically finding federal jurisdiction to exist on either the basis of the law of salvage or the law of finds, even when they declined to apply one of the two. Compare, e.g., Platoro, 614 F.2d at 1051, with Treasure Salvors, 569 F.2d at 330. Congress, too, at points in the legislative history to the ASA, seems to concede that admiralty jurisdiction over abandoned shipwrecks is clear in the absence of the ASA. See, e.g., House Report at 371 ("This jurisdiction includes claims for salvage of abandoned shipwrecks").
 
 
 33
 We leave resolution of the question for another day. Courts are justifiably reluctant to strike down legislation unless the question is squarely presented. Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council, 485 U.S. 568, 575, 108 S.Ct. 1392, 1397, 99 L.Ed.2d 645. The ASA has not yet been determined to apply to the Seabird. The district judge, should she find on remand that the Seabird is embedded, will revisit the constitutionality question. We express no agreement or disagreement with her original conclusion that the ASA is constitutional, though as the preceding discussion has indicated we see the relevant issues somewhat differently from the court below.
 
 
 34
 If the ASA passes the first constitutional hurdle, then it passes constitutional muster, for it does not violate the second requirement that admiralty law foster uniformity. The language of the Constitution does evidence "a strong federal interest in the orderly and uniform judicial governance of the concerns of the maritime industry." Black, Admiralty Jurisdiction, 50 Col.L.Rev. 259, 262 (1950). The uniformity principle has been interpreted to ensure the supremacy of federal admiralty law, where admiralty law clearly applies. Thus the cases invoking the principle hold, for example: that a state worker compensation law is preempted by admiralty law when a maritime worker on a vessel in navigable waters claims disability, see Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086; Knickerbocker Ice Co. v. Stewart, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834; that the Death on the High Seas Act pre-empts the Louisiana wrongful death statute for death occurring outside of state territorial waters, Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207, 106 S.Ct. 2485, 91 L.Ed.2d 174; and that state tort laws cannot be applied to an accident between two pleasure boats on navigable waters, once the accident is determined to be within admiralty jurisdiction, Foremost, 457 U.S. at 668, 102 S.Ct. at 2654. The uniformity principle leaves states free to enact and enforce legislation that is neither "hostile to the characteristic features of the maritime law or inconsistent with federal legislation." Just v. Chambers, 312 U.S. 383, 388, 61 S.Ct. 687, 691, 85 L.Ed. 903.[11] It thus follows that if the management of historic wreck sites is not a concern central to admiralty, state regulation in the area is permissible.[12] If the ASA permissibly takes embedded shipwrecks entirely out of the realm of federal admiralty jurisdiction, the uniformity principle has not been violated.
 
 
 35
 State court suits over embedded shipwrecks may, then, proceed. The parties and the district judge believed that the ASA might leave Zych, after dismissal of his federal case, without a forum.[13] Their preoccupation stemmed from a mistaken notion that a suit over an embedded shipwreck remains one at admiralty even after passage of the ASA. They believed embedded shipwreck cases are still exclusively within the province of the federal courts, even if the ASA forbids application of substantive admiralty law. In fact the ASA purports to remove litigation involving the ownership of embedded shipwrecks from the purview of admiralty jurisdiction altogether. Assuming that this jurisdictional alteration is constitutional, states are free to adjudicate the cases.
 
 
 36
 We acknowledge that Zych may have trouble finding an appropriate Illinois state law under which to sue.[14] Illinois recently passed the Archaeological and Paleontological Resources Protection Act ("APRPA"), the first Illinois statute that applies explicitly to shipwrecks. See Ill.Ann.Stat. ch. 127, p 133c.01 et seq. (Smith-Hurd Supp.1991). Pursuant to the statute, Illinois now grants permits for the excavation of abandoned shipwrecks, id., and these permits will govern the rights between the salvor and the state in future cases. Unfortunately for Zych, the APRPA became effective in January 1990, six months after he located the Seabird. Zych may be able to make use of common law property or contract notions to wrest the ownership conferred on the state in the first instance by the ASA. Also, Zych might seek retroactive application of the APRPA to claim the same rights in the Seabird that other salvors now are given by permit. The options have not yet been explored since the parties thus far have believed that a state court suit was impossible in any event.
 
 
 37
 This speculation about a future state court action may become irrelevant if Zych's federal suit survives remand, either because the ASA is found not to apply to a non-embedded Seabird, or if the ASA is deemed applicable but unconstitutional. In either of these latter cases, Zych remains free, as he was before enactment of the ASA, to pursue an admiralty suit under either the law of finds or the law of salvage.
 
 
 38
 Even if federal jurisdiction exists over this case, however, Zych would have to overcome the Eleventh Amendment bar to suits against the states in federal court. The parties have briefed the Eleventh Amendment issue at length, for they believed it the only question relevant to resolving the case. We decline to express our view on the proper disposition of this issue until it is necessary.[15] The case central to the state sovereign immunity issue is Florida Department of State v. Treasure Salvors, Inc., 458 U.S. 670, 102 S.Ct. 3304, 73 L.Ed.2d 1057, in which a plurality of the Court allowed a federal court to issue process against state officials to secure the possession of shipwreck treasure when those officials had no colorable basis on which to retain possession of the artifacts. Id. at 697, 102 S.Ct. at 3321. It explicitly reserved the question presented here of "the extent to which a federal district court exercising admiralty in rem jurisdiction over property before the court may adjudicate the rights of claimants to that property as against sovereigns [who do not consent to the adjudication]." Id.
 
 
 39
 It is of course preferable that a suit be resolved on the first appeal. However, we will not question the constitutionality of a federal statute on the mere assumption that it might be relevant. If the ASA applies to the Seabird because it is embedded, our discussion regarding the issues to be considered in determining the ASA's constitutionality will be available to the parties and the district judge. To save time on remand, we invite the district judge to reinstate her original conclusions and reasoning, to the extent that she remains convinced of their correctness.[16] The district court judgment is reversed and remanded with instructions to find whether the Seabird is embedded and, if so, whether the ASA is constitutional so as to permit its application to this case.
 
 
 
 [1]
 IDOT is trustee of the Illinois portion of Lake Michigan's lakebed. IHPA is the agency responsible for maintaining historically significant properties of the state of Illinois
 
 
 [2]
 The state invoked the Aboriginal Records and Antiquities Act, Ill.Rev.Stat. ch. 127, p 133c1 et seq. (1987); the Rivers, Lakes and Streams Act, Ill.Rev.Stat. ch. 19, p 52 et seq. (1989); and the Human Grave Protection Law, Ill.Rev.Stat. ch. 127, p 2661 et seq. (1989)
 
 
 [3]
 The judge concluded that neither the Rivers, Lakes and Streams Act nor the Human Grave Protection Law purported to grant the state title to submerged or buried artifacts. She declined to reach the issue of whether the Aboriginal Records and Antiquities Act could support the state's claim, because it had been amended during the pendency of the lawsuit and neither party had addressed in its briefs the effect of the amendments
 
 
 [4]
 The district court's analysis of Zych's claims under both the ASA and the law of finds was erroneous since the ASA precludes reference to the law of finds where the ASA applies
 
 
 [5]
 The United States retains title to historic wrecks located on public lands of the United States. 43 U.S.C. § 2105(d)
 
 
 [6]
 Neither party contends that the Seabird's site has been declared eligible for inclusion in the National Register of Historic Places so as to subject the Seabird to the ASA under Section 6(a)(3)
 Though we agree with plaintiff that a specific finding of embeddedness is necessary for Section 6(a)(1) of the ASA to apply, we reject plaintiff's argument that the United States must give public notice of all wrecks to which it purports to be asserting title under Section 6(a)(1) for the assertion of title to be valid. The first sentence of Section 6(b) requires the United States to give "adequate notice of the location of any shipwreck to which title is asserted under this section." However, Section 6(b) qualifies Section 6(a)(3), not Section 6(a)(1) or (2). Section 6(b), in its second sentence, sets out the means by which a wreck is determined eligible for inclusion in the National Register of Historic Places. This makes it apparent that the notice requirement of Section 6(b) refers only to shipwrecks qualifying for ASA treatment under Section 6(a)(3), those lying on submerged lands but eligible for inclusion in the National Register.
 
 
 [7]
 "Embeddedness" in the ASA is to be "consistent with the recognized exception from the law of finds for shipwrecks embedded in submerged lands of a state." House Report at 375-376. As used in the context of the law of finds, embeddedness is a factual question to be established by evidence. See Chance v. Certain Artifacts Found & Salvaged from The Nashville, 606 F.Supp. 801, 807 (S.D.Ga.1984) (court finds "vessel is firmly attached to river bottom" after hearing evidence from expert diver), affirmed without opinion, 775 F.2d 302 (11th Cir.1985); Klein v. Unidentified, Wrecked & Abandoned Sailing Vessel, 568 F.Supp. 1562, 1566 (S.D.Fla.1983) (court finds vessel embedded after hearing uncontradicted testimony and viewing film indicating wreck is substantially buried in land), affirmed, 758 F.2d 1511 (11th Cir.1985)
 
 
 [8]
 This assumes no other basis for federal jurisdiction can be found. The parties are not alleged to be diverse. The ASA itself gives finders no cause of action or right to relief
 
 
 [9]
 The elimination of the law of salvage as applied to embedded shipwrecks in particular would destroy a finder's ability to bring a federal in rem admiralty action. In rem jurisdiction exists when a maritime lien arises. Fed.R.Civ.P. C(1) (Supplemental Rules of Certain Admiralty and Maritime Claims). It is the salvage claim that gives rise to a lien, for the salvage award is secured by the ship itself. Norris, 3A Benedict on Admiralty § 143 (1991)
 
 
 [10]
 The law of finds developed at common law but has come to be considered a maritime concept. See Owen, The Abandoned Shipwreck Act of 1987: Goodbye to Salvage in the Territorial Sea, 19 J. of Mar.L. & Comm. 499, 510 (1988). Compare Subaqueous, 577 F.Supp. at 611 (referring to "maritime law of finds"); Treasure Salvors, 569 F.2d at 336 (law of finds is adjunct to salvage law), with Jupiter Wreck, Inc. v. Unidentified, Wrecked & Abandoned Sailing Vessel, 691 F.Supp. 1377, 1385 (S.D.Fla.1988) ("resolution to a claim of ownership * * * of an historic shipwreck must be based on application of the common law of finds"); Klein v. Unidentified Wrecked and Abandoned Sailing Vessel, 758 F.2d 1511, 1514 (11th Cir.1985) ("The common law of finds generally assigns ownership of the abandoned property * * * ")
 Congress seems to have assumed that the law of finds was indeed an aspect of admiralty law. See, e.g., House Report at 366 ("Aspects of admiralty law most applicable [to historic wrecks] are the 'Law of Finds' * * * 'and the Law of Salvage.' ").
 
 
 [11]
 Recently the Supreme Court has implied that the uniformity doctrine is only properly invoked to strike down state legislation when it purports to regulate commercial navigation, "suits relating to the relationship of vessels, plying the high seas and our navigable waters, and to their crews." Askew v. American Waterways Operators, Inc., 411 U.S. 325, 93 S.Ct. 1590, 36 L.Ed.2d 280 (Florida Oil Spill Prevention and Pollution Control Act not pre-empted by Admiralty Extension Act)
 
 
 [12]
 Thus the ASA can be read as a waiver of pre-emption. It allows the application of state law in an area arguably regulated by admiralty law
 Though not directly relevant to this case, the "savings to suitors" clause of 28 U.S.C. § 1333 should be mentioned. Section 1333, the statute implementing the constitutional grant of jurisdiction over admiralty cases, qualifies the district courts' exclusive jurisdiction by "saving to suitors in all cases other remedies to which they are otherwise entitled." The savings to suitors clause has been interpreted to "leave[ ] state courts competent to adjudicate maritime causes of action in proceedings in personam." Offshore Logistics, 477 U.S. at 222, 106 S.Ct. at 2494. The clause thus explicitly creates an area of concurrent jurisdiction for admiralty cases which can be pursued in personam in state court. However, federal law must be applied to these state court suits because they remain admiralty cases. This "reverse-Erie" doctrine has been examined in Currie, Federalism and the Admiralty: The Devil's Own Mess, 1960 Sup.Ct.Rev. 158.
 
 
 [13]
 This argument is something of a red herring. It is the interaction of admiralty jurisdiction and the Eleventh Amendment which might deprive Zych of a forum. The ASA did nothing to alter the dilemma Zych faces: any action brought in admiralty against the state will be both barred in federal court and outside a state court's jurisdiction
 
 
 [14]
 Federal guidelines promulgated under the ASA have encouraged states, among other things, to issue permits to salvors and to transfer title of ships and artifacts to salvors when appropriate. Abandoned Shipwreck Act Guidelines, 55 Fed.Reg. 50116, 50133, 50135 (Dec. 4, 1990)
 
 
 [15]
 The issue may not arise at all if there is simply no subject matter jurisdiction over Zych's claim. And, even if this Court assumed that jurisdiction existed and considered the Eleventh Amendment issue in isolation, it would need to know whether the Seabird is embedded to assess the colorability of the State's claim under the law of finds. Zych and the State of Illinois have both assumed that Zych's in rem suit would constitute a suit "against the State" for Eleventh Amendment purposes only if the state has a colorable claim to title of the shipwreck
 The state asserted at oral argument, without citing authority and contrary to what it assumed on brief, that the colorability of its claim is irrelevant to the Eleventh Amendment analysis. It maintained that Zych's in rem suit should be barred even if the state has no possible claim to title. The theory apparently is that it is sufficient that Zych asked that his claim be secured as against "all the world," the state of Illinois included. The state may brief this contention and present it to the district court on remand if it wishes.
 
 
 [16]
 If on remand the district court finds the suit against the state barred on Eleventh Amendment grounds, the court should enter judgment with respect to parties other than the state. While Rule 19(b) requires the dismissal of an action when an indispensable party cannot be joined, the state is not an indispensable party to this admiralty in rem action. See Treasure Salvors, 458 U.S. at 684, 102 S.Ct. at 3314 (judgment against others may stand though suit against state should have been dismissed as immune); Sindia Expedition, Inc. v. Wrecked and Abandoned Vessel, etc., 895 F.2d 116, 123 (3rd Cir.1990), contra Marx v. Government of Guam, 866 F.2d 294, 300 (9th Cir.1989); Maritime Underwater Surveys, Inc. v. Unidentified, Wrecked and Abandoned Sailing Vessel, 717 F.2d 6, 8 (1st Cir.1983). The state's rights will not be prejudiced so long as the federal court judgment explicitly declares that it is not adjudicating the state's ownership rights. Florida Dept. of State v. Treasure Salvors, Inc., 689 F.2d 1254, 1256 (5th Cir.1982)