**Harry ZYCH, d/b/a American Diving and Salvage Co., Plaintiff,**

v.

**The UNIDENTIFIED, WRECKED, AND ABANDONED VESSEL, BELIEVED TO BE the SB "SEABIRD," Defendant,**

**and**

**Illinois Department of Transportation, the Illinois Historic Preservation Society, and United States of America, Intervening Defendants.**

**No. 89 C 6502.**

United States District Court, N.D. Illinois, E.D.

Dec. 21, 1992.

Paul N. Keller, Park Ridge, IL, for Zych-plaintiff.

James R. Carroll, Richard F. Linden, Illinois Atty. General's Office, Chicago, IL, for Seabird-defendant, Illinois Dept. of Preservation Agency–Transp., and Illinois

Historic Preservation Agency, intervenors-defendants.

Barbara B. O'Malley, U.S. Dept. of Justice, Torts Branch, Civil Div., Washington, DC, for U.S. intervenor defendant.

Peter E. Hess, Wilmington, DE, for amici American Sport Diver Ass'n, Alliance for Maritime Heritage Conservation, International Scuba Ass'n, Lady Elgin Foundation, Inc. and Sindia Expedition, Inc.

Thompson M. Mayes, Nat. Trust for Historic Preservation in the U.S., Washington, DC, for amici National Trust for Historic Preservation in U.S., Society of Professional Archeologists, Society for Historical Archaeology, Advisory Council on Underwater Archaeology, Society for American Archaeology, Council of American Maritime Museums, Association for Great Lakes Maritime History and Landmarks Preservation Council of Illinois, Inc.

Eric J. Taylor, Asst. Atty. Gen., Tallahassee, FL, for amicus State of Fla.

Thomas J. Emery, Asst. Gen., Lansing, MI, for amicus State of Mich., Dept. of Natural Resources.

## MEMORANDUM OPINION AND ORDER

ILANA DIAMOND ROVNER, Circuit Judge, Sitting by Designation.[*]

## I. INTRODUCTION

This admiralty action comes before the Court on remand from the United States Court of Appeals for the Seventh Circuit. *See Zych v. Unidentified, Wrecked and Abandoned Vessel, Believed to be the "Seabird"*, 941 F.2d 525 (7th Cir.1991). As described by this Court in its opinion prior to plaintiff's appeal (*see Zych v. Unidentified, Wrecked and Abandoned Vessel, Believed to be the SB "Lady Elgin"*, 746 F.Supp. 1334, 1337 (N.D.Ill.1990)), and by the Seventh Circuit on appeal (*see Zych*, 941 F.2d at 526), this case involves the abandoned wreck of a sidewheel steamer— the *Seabird* —which sank in the waters of Lake Michigan off the coast of Illinois on April 9, 1868. The issues posed on remand are whether the *Seabird* is embedded in the submerged lands of the State of Illinois within the meaning of the Abandoned Shipwrecks Act of 1987, 43 U.S.C. §§ 2101–06 (the "ASA"), and if so, whether the ASA unconstitutionally restricts the scope of federal admiralty jurisdiction. For the reasons enumerated below, the Court finds that the *Seabird* is "embedded" in the submerged lands of the State of Illinois, meaning that the ASA applies to the abandoned wreck. Moreover, the Court holds that the Act does not unconstitutionally restrict federal admiralty jurisdiction. Similarly, the Court also rejects plaintiff's arguments that the Act violates substantive due process principles and the tenth amendment. Accordingly, the Court dismisses the case without prejudice for lack of jurisdiction.

## II. PROCEDURAL HISTORY

Plaintiff Harry Zych ("Zych"), who in 1989 located the *Seabird* as well as another sidewheel steamer, the *Lady Elgin*, filed this admiralty action *in rem* on August 29, 1989, seeking title to the shipwreck or a salvage award.[1] Plaintiff's complaint

---

[*] Because of the Court's extended history with this case and its companion case involving the *Lady Elgin*, the Court sits by designation in this case, although it is no longer a member of the district court.

1. In addition to the present complaint, Zych filed a second admiralty action seeking title or a salvage award with respect to the *Lady Elgin*. The *Lady Elgin* and *Seabird* cases initially were consolidated because they raised similar issues. However, when the Court dismissed the *Seabird* case in its entirety on September 13, 1990, it dismissed the *Lady Elgin* action only as against the State of Illinois because another claimant, the Lady Elgin Foundation, Inc. (the "Founda-

tion"), had intervened to assert a claim of ownership. *See Zych*, 746 F.Supp. at 1351. Pursuant to an agreement with CIGNA Property & Casualty Insurance Company ("CIGNA"), the successor to the company that originally had insured the *Lady Elgin* and her cargo and had paid a claim to its insured after the loss of the vessel, the Foundation asserted that it now owned the *Lady Elgin*. Subsequently, the Court determined that Zych had failed to provide sufficient evidence to establish that CIGNA's predecessor had abandoned the *Lady Elgin*. and the Court therefore entered judgment declaring that the Foundation was the sole owner of the shipwrecked vessel. *See Zych v. Unidentified, Wrecked and Abandoned Vessel, Believed to be*

prayed for relief as against all claimants and all the world. Subsequently, the Illinois Department of Transportation and the Illinois Historic Preservation Society (collectively, the "State") intervened for the limited purpose of moving to dismiss both this and the *Lady Elgin* case on the basis of the State's sovereign immunity under the eleventh amendment. The State asserted title to the shipwrecks under, among other state and federal statutes, the ASA. In response to the State's motion, plaintiff challenged the constitutionality of the ASA, which in turn caused the intervention of the United States for the purpose of defending the statute's constitutionality. Pursuant to the State's motion, the Court dismissed plaintiff's complaint in the *Seabird* case in its entirety on September 13, 1990, finding that plaintiff's admiralty action constituted an action against the State of Illinois without its consent in contravention of the eleventh amendment. *Zych*, 746 F.Supp. at 1350–51.

In remanding the action to this Court, the Court of Appeals focused exclusively on the ASA, explaining that

[i]f the ASA applies to this case, and is found constitutional, it is dispositive. The ASA explicitly precludes a claimant to an "embedded" wreck from invoking

the law of finds or the law of salvage. Because these are the only two admiralty causes of action stated in Zych's complaint, if the ASA constitutionally can be applied to the *Seabird*, Zych has simply failed to state a right to relief. The Eleventh Amendment bar is irrelevant, as is any "colorability" analysis.

*Zych*, 941 F.2d at 528. The Court of Appeals noted that this Court's original analysis of Zych's claims under the ASA as well as the law of finds was in error because "the ASA precludes reference to the law of finds where the ASA applies." *Id.* at 528 n. 4. After extensively outlining the history and purpose of the ASA in light of its legislative history, the Court of Appeals explained that potential application of the statute to the *Seabird* raises two questions: first, whether the ASA applies to this case in the first instance, and if so, "whether the scheme created by Congress—to eliminate or 'carv[e] out' of admiralty a certain block of cases apparently within admiralty jurisdiction prior to enactment of the ASA—contravenes any constitutional principles." *Id.* at 530.

The answer to the first question turns on whether the *Seabird* is "embedded in submerged lands of a State." 43 U.S.C. § 2105(a)(1); *Zych*, 941 F.2d at 530.[2] The

---

the SB *"Lady Elgin"*, 755 F.Supp. 213, 216 (N.D.Ill. 1991). In awarding title to the Foundation, the Court also found that the State had knowingly waived any objection to the Foundation's adverse claim of ownership, and therefore, the Court held that its judgment operated against the State, as well as against all other possible claimants. *Id.* at 217. Subsequent to the Court's award of title, the Foundation granted to plaintiff Zych the exclusive salvage rights in the *Lady Elgin*. At plaintiff's request, the Court then entered a preliminary injunction which enjoined all the world, including the State of Illinois, from interfering with plaintiff's exclusive salvage rights. *See Zych v. Unidentified, Wrecked and Abandoned Vessel, Believed to be the SB "Lady Elgin"*, 1991 WL 34714, 1991 U.S. Dist. LEXIS 2962 (N.D.Ill. Mar. 11, 1991). On appeal, the United States Court of Appeals for the Seventh Circuit vacated this Court's preliminary injunction insofar as it operated against the State, concluding that the injunction violated the State's sovereign immunity under the eleventh amendment. *Zych v. Wrecked Vessel Believed to be the "Lady Elgin"*, 960 F.2d 665 (7th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 491, 121 L.Ed.2d 430

(1992). The Court of Appeals held that to obtain any rights as against the State, Zych would be required to litigate his claim in Illinois state court. *Id.* at 670. However, the Court of Appeals held that this Court had appropriately exercised its authority to determine the rights of Zych and the Foundation to the *Lady Elgin* as against everyone in the world with the exception of the State. *Id.*

2. Under the ASA, the United States only asserts title to an abandoned shipwreck that is:
 (1) embedded in submerged lands of a State;
 (2) embedded in coralline formations protected by a State on submerged lands of a State; or
 (3) on submerged lands of a State and is included in or determined eligible for inclusion in the National Register.
 43 U.S.C. § 2105(a). In discussing this provision, the Seventh Circuit pointed out that the scope of the ASA is necessarily limited and that "Congress only cared to transfer ownership and ensure protection of shipwrecks of 'historic significance.'" *Zych*, 941 F.2d at 529. The concept of "embeddedness," according to the Court of Appeals, "serves as a proxy for historic val-

statute defines "embedded" as "firmly affixed in the submerged lands or in coralline formations such that the use of tools of excavation is required in order to move the bottom sediments to gain access to the shipwreck, its cargo, and any part thereof." 43 U.S.C. § 2102(a). The Court of Appeals interpreted this definition to mean that "an embedded wreck is one that is at least partially buried." *Zych*, 941 F.2d at 529. The Court of Appeals then concluded that this Court's finding that the wreck was "likely embedded on submerged lands" (*see Zych*, 746 F.Supp. at 1343), was insufficient to make a determination regarding the applicability of the ASA. *Zych*, 941 F.2d at 530.[3] On remand, therefore, the Court of Appeals directed this Court to conduct an evidentiary hearing to determine if in fact the *Seabird* is "firmly affixed" in the submerged lands of the State of Illinois. *Id.* Because, as the Court of Appeals noted, only plaintiff has actually seen the wreck in its present condition, he would be required to testify at such a hearing on remand. *Id.*

After remand to this Court, the question of "embeddedness" was resolved by the parties without the evidentiary hearing suggested by the Court of Appeals. In response to requests for admission served by the State, Zych admitted for purposes of this litigation that the *Seabird* "is firmly affixed in the submerged lands belonging to the State of Illinois such that the use of tools of excavation would be required in order to move the bottom sediments to gain access to the *Seabird*, its cargo, and any part thereof" and that the wreck is "embedded under any definition of embeddedness including but not limited to the [ASA] and the common law of finds." (Plaintiff's Response to Request to Admit, filed Nov. 14, 1991.) The parties and the Court agree that this admission is sufficient to establish

that the shipwreck is "embedded in the submerged lands of a State" pursuant to section 2105(a)(1) of the ASA. (*See* Plaintiff's Reply Mem. at 1.) Accordingly, the parties are in agreement that the ASA applies to the *Seabird*, assuming that the Act is constitutional.

This brings the Court to the second question posed by the Court of Appeals, a question which will prove much more difficult to answer than the first—whether the ASA contravenes any constitutional principle. The Court of Appeals explained that if this Court were to find that the *Seabird* is embedded, then the Court must determine whether the Act is constitutional so as to permit its application to the abandoned wreck. *Zych*, 941 F.2d at 530. If constitutional, the Act would eliminate Zych's ability to proceed in federal court, because the Act "eliminates the only two admiralty grounds upon which finders of wrecks like Zych traditionally have claimed relief in federal court, the law of salvage and the law of finds." *Id.* A finding that the ASA is constitutional would require the dismissal of Zych's complaint, for his remedy after enactment of the ASA would lie exclusively in the courts of the State of Illinois. *Zych*, 941 F.2d at 533.

In its earlier opinion, the Court considered plaintiff's constitutional challenges to the ASA and found that the Act did not contravene any constitutional principle. *See Zych*, 746 F.Supp. at 1345–48. Although the Court of Appeals expressed no opinion on this Court's ultimate conclusion, it indicated that it viewed the issues somewhat differently from this Court. *Zych*, 941 F.2d at 532.

Initially, the Court of Appeals explained that there are two grounds upon which to challenge statutes modifying substantive admiralty law. *Id.* at 530. First, such a statute may be challenged on the ground

---

ue." *Id.* Because neither party has argued that the *Seabird* is included in or has been determined eligible for inclusion in the National Register of Historic Places, the Act only applies if the wreck is "embedded" in the submerged lands of the State of Illinois. *See id.* at 530 n. 6.

**3.** The Court would note that Zych had not originally argued before this Court that the *Seabird*

was not embedded in the submerged lands of the State of Illinois. Rather, plaintiff's argument simply was that the State had no knowledge of whether or not the *Seabird* was embedded. *See Zych*, 746 F.Supp. at 1343. Plaintiff apparently determined to contest the issue of embeddedness only once the case had progressed to the Court of Appeals.

that it either expands or contracts admiralty jurisdiction, " 'as by excluding a thing falling clearly within [admiralty jurisdiction] or including a thing falling clearly without.' " *Id.* at 530–31 (quoting *Panama R. Co. v. Johnson,* 264 U.S. 375, 386, 44 S.Ct. 391, 394, 68 L.Ed. 748 (1924)). In addition, the enactment could be challenged on the ground that it leaves admiralty jurisdiction non-uniform, for to be constitutional, any alteration in federal admiralty jurisdiction " 'shall be co-extensive with and operate uniformly in the whole of the United States.' " *Id.* at 531.

The Court of Appeals explained that the answer to the uniformity question is largely dependent upon resolution of the initial challenge, for if the Act does not unconstitutionally restrict the scope of federal admiralty jurisdiction, it does not violate the requirement "that admiralty law foster uniformity." *Id.* at 532. The Court of Appeals explained that

> [t]he uniformity principle leaves states free to enact and enforce legislation that is neither "hostile to the characteristic features of the maritime law or inconsistent with federal legislation." *Just v. Chambers,* 312 U.S. 383, 388, 61 S.Ct. 687, 691, 85 L.Ed. 903 [ (1941) ]. It thus follows that if the management of historic wreck sites is not a concern central to admiralty, state regulation in the area is permissible. If the ASA permissibly takes embedded shipwrecks entirely out of the realm of federal admiralty jurisdiction, the uniformity principle has not been violated.

*Id.* at 533. Thus, the ASA may be interpreted as a waiver of federal preemption in the area of abandoned shipwrecks embedded in the submerged lands of a state, a waiver that presents no uniformity problem. *See id.* at 533 n. 12.

Whether the ASA impermissibly alters the scope of federal admiralty jurisdiction, however, is a much more complicated question. Rejecting this Court's earlier conclusion that the ASA merely "deprived shipwreck finders of a right to relief but did not divest federal courts of jurisdiction to hear cases involving embedded ship-

wrecks," the Court of Appeals held that by eliminating federal actions based upon the law of salvage and the law of finds, the ASA effectively "divests federal courts of their admiralty jurisdiction over such claims, and concurrently vests state courts with jurisdiction over the same claims." *Id.* at 531. In other words, "the ASA purports to remove litigation involving the ownership of embedded shipwrecks from the purview of admiralty jurisdiction altogether." *Id.* at 533. Such an alteration in federal admiralty jurisdiction is not unconstitutional per se, however, because the limitation on Congress' power to restrict the scope of admiralty jurisdiction applies only to the exclusion of a class of cases "falling clearly within" federal admiralty jurisdiction. *Id.* (citing *Panama R. Co.,* 264 U.S. at 386, 44 S.Ct. at 394). According to the Court of Appeals,

> this means that Congress may clarify admiralty jurisdiction at the margins but cannot work fundamental changes. Thus it is only if cases involving abandoned shipwrecks were not clearly within admiralty jurisdiction even previous to passage of the ASA that Congress could re-draw the boundary of admiralty jurisdiction in a manner which excluded those cases from the federal courts.

*Id.* The Court of Appeals reserved for resolution by this Court the question of whether abandoned shipwreck litigation was or was not clearly *within the realm of* federal admiralty jurisdiction prior to passage of the ASA.

Although the Court of Appeals was understandably reluctant to reach this "close" constitutional question in a case where a definitive determination had not yet been made on the question of embeddedness, it did comment on the arguments to be advanced in favor of each position. The Court of Appeals initially noted that it "can be argued" that abandoned shipwreck litigation was not firmly within the scope of admiralty jurisdiction prior to enactment of the ASA. *Id.* at 531. The Court of Appeals explained that

> [t]he primary focus of [admiralty] jurisdiction "is unquestionably the protection of maritime commerce." *Foremost Insurance Co. v. Richardson,* 457 U.S. 668,

674, 102 S.Ct. 2654, 2658, 73 L.Ed.2d 300 [(1982)]. Thus typical admiralty matters are those related to commercial vessels and those who operate them. They involve maritime contracts or torts on navigable waters. *De Lovio v. Boit,* 7 Fed.Cas. 418, 444 (No. 3,776) (C.C. Mass. 1815) (Story, J.). Laws developed to govern maritime commerce have only been stretched to apply to litigation over abandoned shipwrecks with some imagination. The law of salvage, for example, originally developed to offer economic incentives to seamen observing ships and cargo in immediate marine peril to undertake rescue efforts. Some courts exercised admiralty jurisdiction over cases involving even long-abandoned and wrecked vessels by extending the applicability of the law of salvage, *see, e.g., Cobb Coin Co. v. Unidentified, Wrecked & Abandoned Sailing Vessel,* 549 F.Supp. 540, 557 (S.D.Fla.1982) (even wreck is "in peril" of being lost through the action of the elements). Others thought the link too tenuous. *See, e.g., Treasure Salvors[, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel Nuestra Senora de Atocha,* 569 F.2d 330, 337 (5th Cir. 1978)] (application of salvage law to shipwreck "stretches a fiction to absurd lengths"). As to the law of finds, courts disagree about whether it is admiralty law at all. Thus it is possible to read the ASA as Congress' legitimate expression of a preference that abandoned shipwreck cases be treated as non-admiralty, made in response to questions about jurisdiction raised but not settled by the federal courts.

*Id.* at 531–32.

On the other hand, the Court of Appeals indicated that "it can persuasively be argued that federal jurisdiction over abandoned shipwreck cases was unquestioned before passage of the ASA." *Id.* at 532. The Court of Appeals noted that the Supreme Court had implicitly accepted the existence of admiralty jurisdiction in *Florida Dep't of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982). *See Zych,* 941 F.2d at 532. Moreover, the Court pointed out that federal courts generally have exercised jurisdiction over shipwreck cases "either on the basis of the law of salvage or the law of finds, even when they declined to apply one of the two." *Id.* Significantly, the Court of Appeals also indicated that the legislative history of the ASA evidences the view of Congress that, in the absence of the Act, "admiralty jurisdiction over abandoned shipwrecks is clear." *Id.*

After registering these comments, the Court of Appeals left to this Court resolution of the constitutional question on remand, noting that federal courts "are justifiably reluctant to strike down legislation unless the question is squarely presented." *Id.* Paying heed to the guidance offered by the Court of Appeals, the Court now turns to the question of the constitutionality of the ASA.[4]

## III. ANALYSIS

Zych maintains that the ASA is unconstitutional on three grounds. First, taking his cue from the opinion of the Court of Appeals, Zych argues that the Act impermissibly excludes from federal admiralty jurisdiction a class of cases which heretofore have fallen clearly within the scope of

---

**4.** The Court has accepted a number of amicus briefs on the constitutional question. A joint brief challenging the constitutionality of the ASA was filed by the American Sport Diver Association, the Alliance for Maritime Heritage Conservation, the International Scuba Association, the Sindia Expedition, Inc., and the Lady Elgin Foundation, Inc. The State of Michigan filed a brief in support of the Act. Moreover, a joint brief in support of the Act was filed by the States of Florida, Maryland, New Jersey, North Carolina, Rhode Island, Vermont, Virginia, and Wisconsin, as well as by the Territory of Guam.

Finally, a joint memorandum in support of the statute also was filed by the National Trust for Historic Preservation in the United States, the Society of Professional Archeologists, the Society for Historical Archaeology, the Advisory Council on Underwater Archaeology, the Society for American Archaeology, the Council of American Maritime Museums, the Association for Great Lakes Maritime History, and the Landmarks Preservation Council of Illinois, Inc. The Court extends its gratitude to all the amici for presenting their views in a careful, well-reasoned manner.

that jurisdiction and that the Act additionally violates the requirement that maritime law in this country be uniform. Second, Zych contends that the ASA is unconstitutional as applied to "embedded" shipwrecks because the Act's focus on "embeddedness" is not rationally related to the statute's stated purpose of preserving abandoned historic shipwrecks. As a result, Zych maintains that the Act violates the due process clause of the fifth amendment. Finally, in a supplemental memorandum submitted after briefing on the constitutional question had been completed, Zych asserts, relying on the recent Supreme Court decision in *New York v. United States*, — U.S. ——, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992), that the Act violates the tenth amendment in that it compels states to accept title to embedded, abandoned shipwrecks and requires that they implement and enforce a federal regulatory program relating to those shipwrecks. After one brief diversion, the Court addresses each of the asserted infirmities in turn, beginning with the issue which most concerned the Court of Appeals in its order of remand—whether the Act impermissibly eliminates federal admiralty jurisdiction over cases involving abandoned shipwrecks.

■ Prior to reaching Zych's constitutional claims, however, the Court must pause for an instant to address a preliminary issue raised by the State. Despite the explicit instructions of the Court of Appeals, the State argues that the Court need not reach the constitutional question because Zych's admission on embeddedness establishes that plaintiff would be unable to obtain relief even if the Court were to declare the ASA unconstitutional. The State maintains that under the law of finds, plaintiff would have no claim to the *Seabird* because of the exception to the finds doctrine which vests title in the owner of the underlying property when a wrecked vessel is found to be embedded. *See Zych*, 941 F.2d at 530 n. 7; *Jupiter Wreck, Inc. v. Unidentified, Wrecked and Abandoned Sailing Vessel*, 691 F.Supp. 1377, 1386 (S.D.Fla.1988). Similarly, the State asserts that Zych also would have no claim under

the law of salvage due to the eleventh amendment immunity of the State of Illinois. The Court agrees with Zych that the State's argument "flies in the face of the specific findings and directions of the Court of Appeals." (Plaintiff's Reply Mem. at 2.) The Court of Appeals directed that "[i]f the Seabird is embedded, *the constitutionality of the ASA must be decided*, for it will determine Zych's ability to pursue a suit in federal court." *Zych*, 941 F.2d at 530 (emphasis added). It is no answer to suggest that plaintiff would be unsuccessful in pursuing his salvage and finds claims even if the Act were declared unconstitutional, for this argument ignores the jurisdictional significance/nature of the constitutional issue: if the Court were to find the Act consistent with the Constitution, it would be required to dismiss the case, leaving plaintiff to pursue any claims to the vessel in state court. *Id.* at 528. As the Court of Appeals explained, the Act's elimination of the law of salvage and the law of finds in cases of historic, abandoned shipwrecks "divests federal courts of their admiralty jurisdiction over such claims, and concurrently vests state courts with jurisdiction over the same claims." *Id.* at 531. Therefore, the Court cannot simply ignore the constitutional question (as well as the explicit instructions of a superior court) and declare that plaintiff would not succeed on his claims even if the Act were found unconstitutional. Rather, the Court must determine the constitutionality of the statute. As will become evident below, however, the relationship alluded to by the State between the results obtained under the ASA and the law of finds does impact the Court's constitutional analysis.

### A. Effect of the ASA on Federal Admiralty Jurisdiction.

Pursuant to article III, section 2 of the United States Constitution, the judicial power of the federal courts extends to "all Cases of admiralty and maritime Jurisdiction." In implementing this grant of jurisdictional authority, Congress provided for exclusive federal jurisdiction over all such cases. *See* 28 U.S.C. § 1333(1); *see also*

*Zych*, 941 F.2d at 530. In *Panama R. Co. v. Johnson*, 264 U.S. 375, 386, 44 S.Ct. 391, 393, 68 L.Ed. 748 (1924), the Supreme Court explained that, although the Constitution in effect adopted as the law of the United States the existing common law developed in admiralty and maritime cases, Congress retained the power "to alter, qualify or supplement [admiralty and maritime law] as experience or changing conditions might require." As emphasized by the Court of Appeals, however, Congress' power in this area is subject to two well-recognized limitations:

> One is that there are boundaries to the maritime law and admiralty jurisdiction which inhere in those subjects and cannot be altered by legislation, as by excluding a thing falling clearly within them or including a thing falling clearly without. Another is that the spirit and purpose of the constitutional provision require that the enactments ... shall be co-extensive with and operate uniformly in the whole of the United States.

*Zych*, 941 F.2d at 530–31 (quoting *Panama R. Co.*, 264 U.S. at 386–87, 44 S.Ct. at 394). The Court of Appeals therefore concluded that although Congress remains free to " 'arrange and rearrange substantive maritime remedies,' " it cannot " 'expand or contract admiralty jurisdiction,' nor can it leave admiralty law non-uniform." *Zych*, 941 F.2d at 531 (citation omitted) (quoting *Lucas v. "Brinknes" Schiffahrts Ges. Franz Lange G.m.B.H. & Co.*, 387 F.Supp. 440, 443 (E.D.Pa.1974) (three-judge court)); *see also Hurst v. Triad Shipping Co.*, 554 F.2d 1237, 1244–45 (3d Cir.), *cert. denied*, 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977).

In challenging the constitutionality of the ASA, Zych argues that section 2106(a), which provides that "[t]he law of salvage and the law of finds shall not apply to abandoned shipwrecks" falling within the terms of the statute, excludes from federal admiralty jurisdiction a class of cases falling clearly within that jurisdiction prior to the ASA. The United States and the State of Illinois, supported by a number of other states as amici curiae (*see supra*, at n. 4), respond that the jurisdictional status of abandoned shipwreck litigation was never so clear as Zych would suggest. Instead, the State and the United States argue that the ASA merely represents a Congressional preference, in response to judicial uncertainty on the question, that abandoned shipwreck litigation be considered outside the realm of federal admiralty jurisdiction. *See Zych*, 941 F.2d at 532.

Initially, the parties argue at length over the respective purposes and historical antecedents of the laws of salvage and of finds. The ASA lumps these two causes of action together and eliminates them both in a single subsection. *See* 43 U.S.C. § 2106(a). This has the effect of depriving federal courts of jurisdiction over abandoned shipwreck litigation. *See Zych*, 941 F.2d at 530. As this Court discussed in its earlier opinion, however, federal courts have drawn distinctions between application of the law of finds and the law of salvage in abandoned shipwreck disputes. *See Zych*, 746 F.Supp. at 1343–44 n. 12. Thus, before the Court considers whether the ASA permissibly eliminates the two distinct causes of action arising under the laws of salvage and of finds—and as a result, the federal jurisdictional basis for abandoned shipwreck litigation—it first must determine whether both are applicable to cases involving historic, abandoned shipwrecks. Only then can the Court determine whether the ASA's elimination of those causes of action contravenes any constitutional principle.

1. Elimination of the law of salvage.

 The statute makes clear that it applies only to "certain abandoned shipwrecks, which have been deserted and to which the owner has relinquished ownership rights with no retention." 43 U.S.C. § 2101(b). In this sense, the Act's utilization of the term "abandoned" is consistent with the traditional interpretation of that term by courts sitting in admiralty. *See Zych*, 755 F.Supp. at 214.[5] Thus, where an

---

5. The House of Representatives Committee on Interior and Insular Affairs noted that the term

"abandoned" as used in the Act, "does not require the original owner to actively disclaim

owner or its successor in interest appears to assert a claim of ownership to a wrecked vessel or its cargo and a court accordingly determines that the vessel has not been abandoned, the ASA has no application. In such a case, the statute does not limit the finder's ability to maintain a federal action under either the law of salvage or the law of finds. *See, e.g., Zych v. Unidentified, Wrecked and Abandoned Vessel, Believed to be the SB "Lady Elgin"*, 755 F.Supp. 213 (N.D.Ill.1991) (finding that *Lady Elgin* not abandoned), *vacated and remanded on other grounds*, 960 F.2d 665 (7th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 491, 121 L.Ed.2d 430 (1992).

In this case, however, in contrast to its companion case involving the *Lady Elgin*, there is no dispute that the *Seabird* has been abandoned. *See id.* at 214. Thus, the Court's first task is to determine whether, absent the ASA, the law of finds or the law of salvage, or both, would provide the Court with jurisdiction to hear Zych's claims to the *Seabird.*

The Court briefly addressed this question in its earlier opinion, stating in a footnote that "[t]he prevailing view is that in the context of historic, abandoned shipwrecks, the law of finds applies rather than the law of salvage." *Id.* (citing *Martha's Vineyard Scuba Headquarters, Inc. v. Unidentified, Wrecked and Abandoned Steam Vessel*, 833 F.2d 1059, 1065 (1st Cir.1987); *Jupiter Wreck*, 691 F.Supp. at 1385; *Chance v. Certain Artifacts Found and Salvaged from the Nashville*, 606 F.Supp. 801, 804 (S.D.Ga.1984), *aff'd mem.*, 775 F.2d 302 (11th Cir.1985); *Subaqueous Exploration & Archaeology, Ltd. v. Unidentified, Wrecked and Abandoned Vessel*, 577 F.Supp. 597, 611 (D.Md.1983), *aff'd mem.*, 765 F.2d 139 (4th Cir.1985)). The Court explained that application of the law of salvage to abandoned shipwrecks would be absurd, because salvage law is premised upon the assumption of continuing ownership over the submerged articles, an element not present where a historic ship-

wreck has been abandoned and no competing claims of ownership have been asserted. *Zych*, 746 F.Supp. at 1343–44 n. 12; *see also Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel*, 569 F.2d 330, 337 (5th Cir.1978) (applying the law of finds to an abandoned shipwreck and stating that "[d]isposition of a wrecked vessel whose very location has been lost for centuries as though its owner were still in existence stretches a fiction to absurd lengths."); *Klein v. Unidentified Wrecked and Abandoned Sailing Vessel*, 758 F.2d 1511, 1514 (11th Cir.1985).

The Fourth Circuit recently discussed at length the differing applications of the laws of salvage and of finds to shipwreck litigation. Consistent with this Court's earlier approach, the Fourth Circuit adopted the prevailing view and held that the law of finds applies in cases of abandoned shipwrecks where no party has appeared to assert a contrary claim of ownership; where contrary claims of ownership are identified and asserted, however, the law of salvage would apply. *Columbus–America Discovery Group v. Atlantic Mutual Ins. Co.*, 974 F.2d 450, 461, 464–65 (4th Cir. 1992). In reaching this conclusion, the Fourth Circuit discussed the historical distinctions between the law of finds and the law of salvage:

> Historically, courts have applied the maritime law of salvage when ships or their cargo have been recovered from the bottom of the sea by those other than their owners. Under this law, the original owners still retain their ownership interests in such property, although the salvors are entitled to a very liberal salvage award....
>
> A related legal doctrine is the common law of finds, which expresses "the ancient and honorable principle of 'finders, keepers.'" *Martha's Vineyard*, 833 F.2d at 1065. Traditionally, the law of finds was applied only to maritime property which had never been owned by

---

title or ownership. The abandonment or relinquishment of ownership rights may be implied or otherwise inferred, as by an owner never asserting any control over or otherwise indicat-

ing his claim of possession of the shipwreck." H.R.Rep. No. 100–514(I), 100th Cong., 2d Sess., *reprinted in* 1988 U.S.C.C.A.N. 365, 366; *see also id.* at 373–74.

anybody, such as ambergris, whales, and fish. 3A Benedict on Admiralty § 158, at 11–15. A relatively recent trend in the law, though, has seen the law of finds applied to long lost and abandoned shipwrecks. *Id.* [at] § 158, 11–16 to 11–18.

*Columbus–America,* 974 F.2d at 459–60; *see also Zych,* 755 F.Supp. at 214 ("The law of finds awards title of abandoned property to the first finder who takes possession of the property with intent to exercise control over it.").

In short, the court concluded in *Columbus–America* that the law of salvage " 'assumes that the property being salved is owned by another, and thus that it has not been abandoned.' " 974 F.2d at 460 (quoting *Hener v. United States,* 525 F.Supp. 350, 356 (S.D.N.Y.1981)); *see also Jupiter Wreck,* 691 F.Supp. at 1388; Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 15–7, at 512 (1987) ("The clear major premise of the law of salvage is that the property that is the object of the salvage act is owned by persons other than the salvor."). The law of finds, on the other hand, "is applied to previously owned sunken property only when that property has been abandoned by its previous owners." *Columbus–America,* 974 F.2d at 461.[6] The Fourth Circuit explained that the law of finds applies in cases where "items are recovered from ancient shipwrecks and no owner appears in court to claim them. Such circumstances may give rise to an inference of abandonment, but should an owner appear in court and there be no evidence of an express abandonment, the law of salvage must be applied." *Id.; see also id.* at 464–65.[7]

The ASA applies only to shipwrecks that have been abandoned by their owners and to which no competing claims of ownership have been asserted. 43 U.S.C. § 2101(b); H.R.Rep. No. 100–514(I), 100th Cong., 2d Sess., *reprinted in* 1988 U.S.C.C.A.N. 365, 366 ("House Report"). The Fourth Circuit's decision in *Columbus–America* would suggest that a federal court sitting in admiralty would apply the law of finds, rather than the law of salvage, to a dispute over title to the artifacts of an abandoned vessel. *Columbus–America,* 974 F.2d at 464–65; *see also Klein,* 758 F.2d at 1514; *Treasure Salvors,* 569 F.2d at 336–37; *Sub-Sal, Inc. v. The DeBraak,* 1992 WL 39050, at *2, 1992 U.S.Dist. LEXIS 2461, at *6–7 (D.Del. Feb. 4, 1992); *Zych,* 746 F.Supp. at 1343–44 n. 12 (citing decisions in line with the prevailing view); 3A Martin J. Norris, *Benedict on Admiralty* § 158, at 11–16 & n. 5 (7th ed. 1992).[8] Thus, by eliminating the law of finds, the ASA eliminates reversion to a body of law to which federal courts traditionally have turned to determine title to property abandoned at sea. However, because admiralty courts traditionally have declined to apply the law of salvage to cases involving abandoned shipwrecks (*see Columbus–America,* 974

---

**6.** In *Hener,* the district court explained that the law of finds primarily is concerned with issues of title: "The law of finds defines the circumstances under which a party may be said to have acquired title to ownerless property. Its application necessarily assumes that the property involved either was never owned or was abandoned." 525 F.Supp. at 356.

**7.** The Fourth Circuit adopted the following explication of the difference between salvage and finds law offered by Professor Schoenbaum:

In the treasure salvage cases, often involving wrecks hundreds of years old, the inference of abandonment may arise from lapse of time and non-use of the property, or there may even be an express disclaimer of ownership. This calls for the application of the law of finds. By contrast, parties who intend to assert a claim of ownership may be identified. In such a case the law of salvage is applied.

*Columbus–America,* 974 F.2d at 462 (quoting Schoenbaum, § 15–7, at 514). Schoenbaum then went on to explain that "[i]n virtually all of the treasure salvage cases involving wrecks of great antiquity, the law of finds, not salvage, is appropriate...." *Id.*

**8.** Plaintiff has conceded that this is the correct approach, for in his opening memorandum, plaintiff describes the laws of salvage and finds as follows:

The clear major premise of the law of salvage is that the property that is the object of the salvage act is owned by someone other than the salvor. Where the property has been abandoned or where the former owner has long-since disappeared, its disposition may be determined under the law of finds, an adjunct to the law of salvage.

(Plaintiff's Mem. at 10–11.)

F.2d at 461; *Martha's Vineyard*, 833 F.2d at 1065; *Hener*, 525 F.Supp. at 357), the Act's elimination of the law of salvage seemingly would have no effect on federal admiralty jurisdiction. This logic would suggest that the Court need only consider the effect on federal jurisdiction of the ASA's elimination of the law of finds, and not its concomitant elimination of the law of salvage, in considering whether the Act eliminates jurisdiction over a matter falling clearly within federal admiralty jurisdiction.[9]

■ In eliminating the law of finds as a means of determining title to abandoned property, however, the ASA also operates to vest title to the abandoned vessel in the state on whose property the wreck is located. 43 U.S.C. § 2105(a), (c). Thus, although a wreck may have been abandoned, it essentially acquires an owner—the state—through operation of the statute. *See Zych*, 960 F.2d at 667; House Report at 377 ("the Committee intends that states should have title to historic and certain other abandoned shipwrecks in state waters, thereby eliminating the assumption that there is no owner of these wrecks").

Assuming that the state then owns the vessel, a finder normally would be entitled to maintain an action against the owner for a salvage award under the law of salvage. *See Klein*, 758 F.2d at 1514–15; *Chance*, 606 F.Supp. at 808. The Act's elimination of the law of salvage nullifies such an opportunity. The effect on federal admiralty jurisdiction is minimal, however, because federal courts consistently have held that a salvor's claim to a salvage award against the state is barred by the eleventh amendment.[10] *See Chance*, 606 F.Supp. at 808; *see also Treasure Salvors*, 458 U.S. at 684, 102 S.Ct. at 3314; *Zych*, 746 F.Supp. at 1349; *Subaqueous Exploration*, 577 F.Supp. at 606. The eleventh amendment therefore limits the jurisdiction of the federal courts to hear claims for an award of salvage against the state. *See Zych*, 960 F.2d at 668–69 ("the eleventh amendment limits the jurisdiction of the federal courts …"); Schoenbaum, § 15–7, at 515 ("The Eleventh Amendment, unfortunately, may thus be used as a jurisdictional defense to suit against the state, at least as to an action *in rem*.").[11]

**9.** Even under the ASA, a salvor/finder, upon locating a wrecked vessel, could file an *in rem* action in federal court seeking a salvage award for his/her efforts. Upon taking jurisdiction over the case, the federal court's first responsibility would be to determine whether or not the wreck has been abandoned because the resolution of that question determines whether or not the federal court has jurisdiction. Presumably, the ASA does not affect the federal court's jurisdiction to resolve questions relating to its jurisdiction. If an owner comes forward to assert a claim to the wrecked vessel, and the federal court finds that the vessel has not been abandoned, then the federal court would retain jurisdiction over the case, and the ASA would not apply. *See Zych*, 755 F.Supp. at 213. Thus, the salvor's action under the law of salvage would be unaffected by the ASA. If, however, no competing claimants appear or a prior owner disclaims any current ownership interest, causing the federal court to conclude that the property has been abandoned, the federal court would then be required to dismiss the action for lack of jurisdiction pursuant to the ASA, assuming that the wreck satisfies the requirements of 43 U.S.C. § 2105(a). *See Zych*, 941 F.2d at 531. The salvor would then be left to pursue any available remedies in state court. *Id.*

**10.** The eleventh amendment states: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any foreign State." As the Court explained in its earlier opinion, the amendment has been construed to apply as well to actions brought against a state by a citizen of that state. *Zych*, 746 F.Supp. at 1338 n. 4 (citing *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)).

**11.** Plaintiff takes issue with the effect of the eleventh amendment bar on the Court's jurisdiction, contending that the eleventh amendment does not affect the federal court's subject matter jurisdiction, but only its jurisdiction over the state as a party. Plaintiff's interpretation is at odds with the language of the eleventh amendment itself, for the amendment provides that federal jurisdiction does not extend "to any suit in law or equity" that is brought against a state. This is the language of subject matter jurisdiction. *See Zych*, 960 F.2d at 668–69; *Darryl H. v. Coler*, 801 F.2d 893, 906–07 & n. 13 (7th Cir. 1986). Moreover, where a salvage award is sought directly against the state, which must be the case when the state is deemed to be the owner of the shipwrecked vessel, there can be no question that the admiralty action is directly against the state. *See Chance*, 606 F.Supp. at 808; *Subaqueous Exploration*, 577 F.Supp. at

Thus, because a salvor essentially had no claim in federal court for a salvage award against the state prior to enactment of the ASA, either because salvage law does not apply to claims against abandoned vessels for which no owner has appeared, or because the eleventh amendment bars an award of salvage against the state as owner of the vessel, the ASA's elimination of the law of salvage as applied to abandoned shipwrecks would have virtually no effect on federal admiralty jurisdiction. By precluding application of the law of salvage to abandoned shipwrecks, the Act does not exclude from federal admiralty jurisdiction a class of cases falling clearly within that jurisdiction. Having found that elimination of the law of salvage poses no constitutional problem, the Court turns to the Act's elimination of the law of finds.

2. Elimination of the law of finds.

■ The common law of finds is utilized as an adjunct to the law of salvage where articles found at sea are determined to be abandoned. Schoenbaum, § 15–7, at 512. As explained by one commentator, the "finds" doctrine "first appeared in a maritime context in 1861 and since at least 1960 in admiralty cases as an 'adjunct' to the law of marine salvage. However, it was and is a common law concept." David R. Owen, *The Abandoned Shipwreck Act of 1987: Good–Bye to Salvage in the Territorial Sea*, 19 J.Mar.L. & Com. 499, 510 (1988). As noted above, the law of finds traditionally has been "applied only to maritime property which had never been owned by anybody, such as ambergris, whales, and fish. A relatively recent trend in the law, though, has seen the law of finds applied to long lost and abandoned shipwrecks." *Columbus–America*, 974 F.2d at 459–60 (citations omitted). Although the law of finds developed at common law, it has come to be accepted as a part of admi-

ralty when applied to abandoned shipwrecks. *See Zych*, 941 F.2d at 532 n. 10.

The Court of Appeals observed that Congress, in acting to eliminate application of the laws of finds and salvage to abandoned shipwrecks, seemed to assume that the law of finds was "an aspect of admiralty law." *Zych*, 941 F.2d at 532 n. 10. The House Committee on Interior and Insular Affairs, which considered the ASA, noted that the aspects of admiralty law most affected by the statute "are the 'Law of Finds'—the principle that the person finding the shipwreck can claim ownership to it—and the 'Law of Salvage'—which awards those who perform acts of salvage a portion of the goods retrieved." House Report at 366. Moreover, the House Committee on Merchant Marine and Fisheries stated in its report that federal admiralty jurisdiction includes litigation over abandoned shipwrecks, to which "federal courts apply common law principles of admiralty, including the law of finds and the law of salvage." *Id.* at 371; *see also id.* at 377. In fact, this Committee recognized that Congress was restricting federal admiralty jurisdiction through the ASA because it stated that Congress specifically intended "to carve out a limited exception from general admiralty principles for those classes of shipwrecks to which this Act applies." *Id.* at 377. Thus, although the law of finds developed at common law, it seems clear that Congress assumed it had become an established part of the federal court's admiralty jurisdiction.

■ In supporting the constitutionality of the ASA, the United States argues that even if the law of finds has become a part of traditional maritime law, "it is not unconstitutional to remove it from the jurisdiction of federal admiralty courts because the concept of finds did not originate in the maritime law and only supplements it." (United States' Brief at 15.) The government, however, has provided no authori-

---

607. Accordingly, under the eleventh amendment, the federal court is without subject matter jurisdiction. Whether or not the action may proceed against parties other than the state is irrelevant because in the case of an abandoned shipwreck to which no competing claims have

been asserted, there is no adverse party except the state. Plaintiff could not possibly seek a salvage award against parties other than the state because no other party has claimed an ownership interest in the vessel. *See Zych*, 941 F.2d at 534 n. 16; *see also Zych*, 960 F.2d at 670.

ty that would support a distinction between a doctrine originating in admiralty and a doctrine borrowed from the common law. Our own Court of Appeals seems to have rejected such a distinction. *See Zych,* 941 F.2d at 532 n. 10. Moreover, this Court independently finds that the distinction offered by the government cannot be supported. When the framers of the Constitution included within federal admiralty jurisdiction "all cases of admiralty and maritime jurisdiction," they necessarily included common law concepts traditionally utilized by admiralty and maritime courts. *Panama R. Co.,* 264 U.S. at 385–86, 44 S.Ct. at 393. It does not follow, therefore, that a particular type of case was not "clearly" within admiralty jurisdiction simply because the theory underlying the case developed at common law. Instead, the law of finds operates in admiralty with the same jurisdictional basis as the law of salvage, which unquestionably is a concept grounded in admiralty. *See* Schoenbaum, § 15–7, at 512.[12]

■ Assuming that the law of finds is an admiralty concept that provides federal jurisdiction over abandoned shipwreck litigation, the question then becomes whether Congress has unduly restricted the scope of admiralty jurisdiction by eliminating application of the law of finds to this class of cases. The Court concludes that it has not because the Act does not remove from federal jurisdiction any significant federal function that rested with the federal courts in abandoned shipwreck litigation prior to the Act. This becomes clear when federal treatment of the typical abandoned shipwreck case arising in admiralty is compared to treatment of the same case under the Act.

■ In the typical shipwreck case, a federal admiralty court first must determine whether the wreck at issue has been abandoned. If it has, then the court will apply the law of finds to adjudicate title to the vessel. *See supra,* at 1310–11. One aspect of the law of finds that must be considered is the "embeddedness exception." If the federal court should determine that the abandoned wreck is embedded in the submerged lands of a state, then the law of finds operates to award title to the state upon whose land the wreck is embedded. *See Zych,* 746 F.Supp. at 1343; *Jupiter Wreck,* 691 F.Supp. at 1386; *Chance,* 606 F.Supp. at 805 ("When personalty is found embedded in land however, title to that personalty rests with the owner of the land."); *Klein v. Unidentified, Wrecked and Abandoned Sailing Vessel,* 568 F.Supp. 1562, 1565–66 (S.D.Fla.1983), *aff'd,* 758 F.2d 1511 (11th Cir.1985); *see also* Owen, 19 J.Mar.L. & Comm. at 510. The salvor then would be left only with a claim for salvage against the state as owner of the vessel. *See Chance,* 606 F.Supp. at 808. As explained above, such a salvage claim would run into the jurisdictional bar of the eleventh amendment. *See supra,* at 1312–13. Thus, once the federal court has determined that the wreck has been abandoned and that it is embedded in the submerged lands of a state, the embeddedness exception to the law of finds would require that the court award title to the state and that it dismiss any salvage claim for lack of jurisdiction pursuant to the eleventh amendment.

The ASA accomplishes an almost identical result. As it did in a typical admiralty

---

**12.** It also is clear, however, that admiralty courts traditionally have disfavored application of the law of finds. As the Fourth Circuit observed in *Columbus–America,* "[c]ourts in admiralty favor applying salvage law rather than the law of finds." 974 F.2d at 460. Moreover, as explained by the district court in *Hener v. United States,*

 [t]he law of finds is disfavored in admiralty because of its aims, its assumptions, and its rules. The primary concern of the law of finds is title. The law of finds defines the circumstances under which a party may be

said to have acquired title to ownerless property. Its application necessarily assumes that the property involved either was never owned or was abandoned....

 Would-be finders are encouraged by these rules to act secretly, and to hide their recoveries, in order to avoid claims of prior owners or other would-be finders that could entirely deprive them of the property.

525 F.Supp. at 356; *see also Columbus–America,* 974 F.2d at 460. Although disfavored, however, the law of finds clearly has become an admiralty concept.

action, the federal court first must determine whether a wrecked vessel has been abandoned and whether it is embedded in the submerged lands of a state. *See Zych,* 941 F.2d at 530; *see also* 43 U.S.C. §§ 2101(b) and 2105(a). As the Court of Appeals observed, the concept of "embeddedness" under the ASA is consistent with the embeddedness exception to the law of finds.[13] *Zych,* 941 F.2d at 530 n. 7; House Report at 375–76. The initial inquiry is therefore the same pre- and post-ASA. Once the federal court determines that a wreck is both abandoned and embedded, the ASA would vest title to the vessel in the state and eliminate any admiralty claim under the laws of salvage and finds. 43 U.S.C. §§ 2105(c) and 2106. In addition, because the laws of salvage and finds generally are the only admiralty causes of action that would confer federal jurisdiction over a shipwreck case, the court would be required to dismiss the action for lack of jurisdiction. *See Zych,* 941 F.2d at 528. The end result is therefore identical to that reached through application of the law of finds—the state holds title to the wrecked vessel pursuant to the ASA, and the federal court lacks jurisdiction over any claim for salvage.

As the above comparison makes clear, the federal court has retained jurisdiction to perform an identical function under both the law of finds and the ASA—that is, to determine whether the wreck has been abandoned and whether it is embedded. If the court finds both abandonment and embeddedness, title is vested in the state, either through application of the embeddedness exception to the law of finds, or through operation of the statute itself.[14] Because the federal court has performed essentially the same function in each instance, the Act has not had a substantial effect on federal jurisdiction. Instead, any effect on federal admiralty jurisdiction has been "at the margins." *See Zych,* 941 F.2d at 525. The Act essentially has provided for a statutory transfer of title to a state that is consistent with the judicial result reached through application of the embeddedness exception to the law of finds. Accordingly, the Court holds that by eliminating application of the law of finds to abandoned shipwreck litigation, Congress has not worked a "fundamental change" in federal admiralty jurisdiction. *Id.* Congress has not removed from admiralty jurisdiction a class of cases falling clearly within that jurisdiction prior to the Act.

For the same reason, the Act also does not violate the uniformity principle. *See id.* The Court of Appeals explained that

[i]f the ASA passes the first constitutional hurdle, then it passes constitutional muster, for it does not violate the second requirement that admiralty law foster uniformity.... The uniformity principle leaves states free to enact and enforce legislation that is neither "hostile to the characteristic features of the maritime law or inconsistent with federal legislation." *Just v. Chambers,* 312 U.S. 383, 388, 61 S.Ct. 687, 691, 85 L.Ed. 903. It thus follows that if the management of historic wreck sites is not a concern central to admiralty, state regulation in the area is permissible. If the ASA permissibly takes embedded shipwrecks entirely out of the realm of federal admiralty jurisdiction, the uniformity principle has not been violated.

*Id.* at 532–33. The Court has concluded above that Congress permissibly removed abandoned shipwreck litigation from federal admiralty jurisdiction. Thus, the Act poses no uniformity problem. The Court

---

**13.** The term "embedded" is defined in the statute to mean "firmly affixed in the submerged lands or in coralline formations such that the use of tools of excavation is required in order to move the bottom sediments to gain access to the shipwreck, its cargo, and any part thereof." 43 U.S.C. § 2102(a).

**14.** The Court's discussion here is hypothetical and assumes application of both the law of finds and the ASA to the same abandoned shipwreck.

The Court recognizes, however, that a salvor's claims cannot be analyzed under both the law of finds and the ASA because "the ASA precludes reference to the law of finds where ASA applies." *Zych,* 941 F.2d at 528. The Court's purpose is merely to point out that there is little change either in the district court's function or in the result under the law of finds or the ASA.

would add to the Court of Appeals' analysis only that the Act has little if any effect on the law applied in abandoned shipwreck cases. As explained above, either pre- or post-ASA, title is awarded to the state, and the salvor is precluded from pursuing a salvage claim in federal court. Therefore, the salvor either has no forum that will hear his salvage claim, or he is left to pursue such a claim in state court. *See Zych*, 941 F.2d at 533 & n. 13. In either case, the Act has had no effect on the uniform application of federal admiralty law.

For the foregoing reasons, the Court concludes that Congress, in enacting the ASA, acted in a manner consistent with the recognized limits on its power to alter or modify federal admiralty jurisdiction.

### B. Due Process.

■ Alternatively, plaintiff argues that the ASA violates the fifth amendment's guarantee of substantive due process in that the Act's application to "embedded" shipwrecks is not rationally related to its purpose of transferring ownership and ensuring the maintenance and protection of shipwrecks having historic significance. *See Zych*, 941 F.2d at 529 ("Congress only cared to transfer ownership and ensure protection of shipwrecks of 'historic significance'" (citing House Report at 365)); *see also* House Report at 370. According to Zych, the fact that a wreck has become embedded in submerged lands bears no rational relationship to its historic value. Plaintiff therefore argues that the Act sweeps too broadly, encompassing virtually all shipwrecks regardless of their historic character. As a result, plaintiff maintains that he has been deprived of a property interest in the *Seabird* to the extent that he retains a maritime lien for salvage simply because the wreck is embedded.[15] *See Zych*, 941 F.2d at 531 n. 9.

As the Court of Appeals observed, under the ASA "the concept of 'embeddedness' serves as a proxy for historic value." *Id.*

at 529. However, it is clear that this "proxy" is inexact because Congress estimated that of the 50,000 shipwrecks located in the navigable waters of the United States, only five to ten percent have any historic significance. *Id.; see also* House Report at 365. It is likely that a greater percentage of these shipwrecks have become embedded with the passage of time. Thus, Congress itself seems to have recognized that the Act covers more than only shipwrecks having historic significance.

■ However, because Zych has not alleged the deprivation of a fundamental right, the Act only would violate substantive due process principles if it is arbitrary and lacks a reasonable relationship to a legitimate legislative purpose. *See Swank v. Smart*, 898 F.2d 1247, 1251 (7th Cir.), *cert. denied*, 498 U.S. 853, 111 S.Ct. 147, 112 L.Ed.2d 113 (1990); *see also Nebbia v. New York*, 291 U.S. 502, 525, 54 S.Ct. 505, 510–11, 78 L.Ed. 940 (1934). The Court holds that the ASA's emphasis on embeddedness is neither arbitrary nor irrational and that the concept of "embeddedness" bears a rational relationship to the purpose of the ASA. Although the Act may be overly inclusive, it is difficult to imagine how to limit its scope while adequately serving the express legislative purpose. For example, if Congress had limited the reach of the Act only to those wrecks "included in or determined eligible for inclusion in the National Register," thereby ensuring that only wrecks of historic significance would be encompassed, the statute would *not* be sufficiently inclusive because it would apply only to wrecks whose approximate location is known. *See* 43 U.S.C. § 2105(a)(3) & (b); House Report at 367; *see also Zych*, 941 F.2d at 530 n. 6; 56 Fed.Reg. 7875. Wrecks such as the *Seabird* and the *Lady Elgin*, whose precise locations were unknown prior to their discovery by Zych, would be unprotected even if it were later determined that the wrecks had historic significance. Thus, the Na-

---

**15.** Presumably, plaintiff's argument is that the *Seabird* is not a wreck of historic significance despite the fact that it is embedded in the submerged lands of the State of Illinois. As such, it should not be covered by a statute designed to protect shipwrecks of historic significance.

tional Register standard alone would not adequately serve the purposes of the Act.[16]

■ The requirement of embeddedness is a rational and not arbitrary barometer of historic value. The legislative history of the Act makes clear that Congress attempted to limit the scope of the ASA to the extent possible. *See* Owen, 19 J.Mar.L. & Comm. at 502–05. Although plaintiff correctly points out that it is likely that almost all shipwrecks will become embedded in time, it is unlikely that a relatively recent shipwreck—one with presumably no historic significance—would also be abandoned by its owner. For example, plaintiff seems to suggest that the recent disaster involving the *Exxon Valdez* would be covered by the Act because the vessel became "firmly affixed" to a reef belonging to the State of Alaska shortly after its accident. However, even if the *Exxon Valdez* was firmly affixed to the reef such that "tools of excavation" were required to "move the bottom sediments to gain access to the shipwreck" (43 U.S.C. § 2102(a)), the *Exxon Valdez* was not abandoned by its owner. Absent abandonment, the embeddedness question is irrelevant; the Act does not apply. *See* 43 U.S.C. § 2105(a) (applying only to "abandoned shipwrecks"); *see also* 43 U.S.C. § 2101(b); House Report at 366, 373–74. Thus, it is the interplay between the requirements that a shipwreck be both embedded and abandoned that limits the scope of the Act so as to more narrowly serve the legislative purpose. In conjunction with

the requirement of abandonment, the Court concludes that the concept of "embeddedness" is rationally related to the Act's purpose of ensuring the protection of historic shipwrecks.[17]

## C. *Tenth Amendment.*

■ In a supplemental pleading filed after the completion of briefing on the constitutional question, plaintiff raised an additional ground on which the Court should invalidate the ASA. Relying on the Supreme Court's recent decision in *New York v. United States*, —— U.S. ——, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992), Zych argues that the Act violates the tenth amendment[18] insofar as it compels states to accept title to abandoned shipwrecks and to implement and enforce a federal regulatory program relating to those shipwrecks. Plaintiff maintains that for the reasons articulated by the Supreme Court in *New York*, it is beyond the power of Congress to require that states take title to property such as abandoned shipwrecks. Plaintiff further argues that once Congress has required a state to accept title, it is impermissible to compel states to enact a regulatory program relating to that property. The Court begins its consideration of plaintiff's final constitutional argument with a discussion of the Supreme Court's decision in *New York*.

There, the Supreme Court considered constitutional challenges to certain provi-

---

**16.** One commentator has noted that the National Register requirement in 43 U.S.C. § 2105(a)(3) adds little to the scope of the Act because almost all wrecks listed in the National Register also are embedded:

The Register includes historic shipwrecks and multiple-shipwreck sites. At the present time 43 sites encompassing 200 or more shipwrecks are included or have been determined eligible for inclusion. However, all such shipwrecks are embedded in the bottom except the *U.S.S. Monitor*, the *U–352* and the Japanese Fleet at Truk, and those are not in state waters. It would therefore seem that at present the Register adds no shipwrecks to those otherwise covered by the Act.

Owen, 19 J.Mar.L. & Comm. at 505.

**17.** The Court would note that the Act also does not operate to deprive plaintiff of a maritime

lien to which he would otherwise be entitled under admiralty law. As explained above, assuming that the *Seabird* is embedded in the submerged lands of the State of Illinois, the "embeddedness" exception to the law of finds would operate to award title in the vessel to the State. Moreover, plaintiff's claim for an award of salvage would be a claim directly against the State of Illinois and, as such, would be barred by the eleventh amendment. Thus, at least with respect to an abandoned, embedded shipwreck, plaintiff did not retain a maritime lien *actionable in federal court* even prior to passage of the ASA.

**18.** This amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.

sions of the Low–Level Radioactive Waste Policy Amendments Act of 1985, 42 U.S.C. § 2021b *et seq.* (the "Waste Act"). At issue were three provisions that created incentives for states to provide for the disposal of low-level radioactive waste generated within their borders. The Court approved the first set of incentives because they merely conditioned the receipt of federal grant money upon a state's attainment of a series of milestones in its waste disposal programs. —— U.S. at ——, 112 S.Ct. at 2427. The Court held that under its spending powers, "'Congress may attach conditions on the receipt of federal funds.'" *Id.* —— U.S. at ——, 112 S.Ct. at 2423 (quoting *South Dakota v. Dole,* 483 U.S. 203, 206, 107 S.Ct. 2793, 2795, 97 L.Ed.2d 171 (1987)). The second set of incentives, which authorized a state with waste disposal capabilities to deny access to waste generated in states failing to meet federal deadlines, also was consistent with the tenth amendment because it did not compel any regulatory action by the states. Instead, this provision left to an individual state and its citizens the decision whether to comply with the federal guidelines. *Id.*[19]

The Supreme Court found that the third set of incentives, however, were "of a different character" from the first two. *Id.* That incentive offered to states, "as an alternative to regulating pursuant to Congress' direction, the option of taking title to and possession of the low level radioactive waste generated within their borders and becoming liable for all damages waste generators suffer as a result of the States' failure to do so promptly." *Id.* —— U.S. at ——, 112 S.Ct. at 2427–28. The Supreme Court held that this set of incentives "crossed the line distinguishing encouragement from coercion." *Id.* —— U.S. at ——,

112 S.Ct. at 2428. The Court determined that the Constitution would not permit Congress to impose either option of this incentive program as a freestanding requirement; therefore, "Congress lacks the power to offer the States a choice between the two." *Id.* First, the Court concluded that Congress could not simply require that a state regulate waste disposal pursuant to its direction. Such a regulatory option would "present a simple command to state governments to implement legislation enacted by Congress." *Id.; see also FERC v. Mississippi,* 456 U.S. 742, 764–65, 102 S.Ct. 2126, 2140, 72 L.Ed.2d 532 (1982). Such a command is inappropriate because although Congress "has the authority under the Constitution to pass laws requiring or prohibiting certain acts, it lacks the power directly to compel the States to require or prohibit those acts." *New York,* —— U.S. at ——, 112 S.Ct. at 2423. Similarly, the option that would require a state to take title to waste and to assume liability for any damages arising therefrom also "'commandeer[s]' state governments into the service of federal regulatory purposes," and is therefore "inconsistent with the Constitution's division of authority between federal and state governments." *Id.* —— U.S. at ——, 112 S.Ct. at 2428. Therefore, the Court concluded that in the take-title provision, unlike the first two sets of incentives, Congress had not "held out the threat of exercising its spending power or its commerce power." Instead, it "held out the threat, should the States not regulate according to one federal instruction, of simply forcing the States to submit to another federal instruction." *Id.* The Supreme Court found such a choice "between two unconstitutionally coercive regulatory techniques [to be] no choice at all." *Id.* Ac-

---

**19.** The Supreme Court explained that by merely encouraging, rather than compelling, compliance with an articulated federal policy,

the residents of the State retain the ultimate decision as to whether or not the State will comply. If a State's citizens view federal policy as sufficiently contrary to local interests, they may elect to decline a federal grant. If state residents would prefer their government to devote its attention and resources to problems other than those deemed important by

Congress, they may choose to have the Federal Government rather than the State bear the expense of a federally mandated regulatory program, and they may continue to supplement that program to the extent state law is not preempted. Where Congress encourages state regulation rather than compelling it, state governments remain responsive to the local electorate's preferences; state officials remain accountable to the people.
*Id.* —— U.S. at ——, 112 S.Ct. at 2424.

cordingly, the Court invalidated the take-title provision.

Plaintiff likens the take-title provision in the Waste Act to the provision in the ASA that transfers title to abandoned shipwrecks to the state on whose land the wreck is located. Plaintiff maintains that for the reasons articulated by the Supreme Court in *New York*, Congress lacks the power to compel states to accept title to abandoned shipwrecks. Similarly, Zych argues that the Act violates the tenth amendment insofar as it requires states to develop regulatory programs relating to the management of historic wreck sites that are consistent with the statute.

On the issue of title, the Court agrees with the government that the take-title provision in the ASA can be distinguished from the Waste Act provision requiring that states accept title to low-level radioactive waste generated within their borders. As the government points out, the United States has asserted title to abandoned shipwrecks covered by the Act, and section 2105(c) then transfers title from the United States to the state upon whose land the wreck is located. 43 U.S.C. § 2105(a), (c). Because the state obtains title to abandoned shipwrecks from the United States, rather than from a private citizen as in the Waste Act, the ASA does not subsidize or benefit particular state citizens at the expense of others. *See New York*, —— U.S. at ——, 112 S.Ct. at 2428 (forced transfer of radioactive waste to a state "would be no different than a congressionally compelled subsidy from state governments to radioactive waste producers"). Instead, like the Submerged Lands Act before it, the ASA merely treats abandoned shipwrecks as non-living resources on submerged state land to which the states hold title. *See* 43 U.S.C. § 2101; House Report at 373 (Section 2101(a) "recognizes that, under the Submerged Lands Act (43 U.S.C. [§] 1301 *et seq.*), states already have the responsibility for all living and nonliving resources in state waters and submerged lands." Subsection (b) "confirms that, con-

sistent with their existing responsibility, states also should have the responsibility for certain abandoned shipwrecks."); *see also Marx v. Government of Guam*, 866 F.2d 294, 300 (9th Cir.1989) (in the ASA, Congress set out to clarify that abandoned shipwrecks were resources of the state under the Submerged Lands Act).

Moreover, unlike the Waste Act, the ASA does not coerce states to accept title to something that is undesirable.[20] Rather, as the Court of Appeals observed, twenty-eight states already "had passed legislation relating to the management of historic shipwrecks at the time the ASA was being considered...." *Zych*, 941 F.2d at 528; *see also* House Report at 366, 370. Under most of these statutes, states have asserted "title to shipwrecks in State waters and prescribe[d] regulations for the protection and salvage of wrecks of historic significance." House Report at 371; *see also id.* at 366. The citizens of these states had already expressed a preference that states retain title to abandoned shipwrecks located on state lands. *Cf. New York*, —— U.S. at ——, 112 S.Ct. at 2431. Because these state statutes had received a mixed reception from federal admiralty courts (*see e.g., Cobb Coin Co. v. Unidentified, Wrecked & Abandoned Sailing Vessel*, 525 F.Supp. 186 (S.D.Fla.1981) (invalidating Florida salvage regulations)), the ASA serves to accomplish on a federal level what the states had attempted to do on their own behalf, but with limited success. *See Zych*, 941 F.2d at 528. Accordingly, by transferring title to an abandoned shipwreck from the United States to the particular state upon whose submerged land the wreck is located, Congress has not commandeered "state governments into the service of federal regulatory purposes." *New York*, —— U.S. at ——, 112 S.Ct. at 2428. Rather, the transfer of title provision is consistent with existing state policy as well as with "the Constitution's division of authority between federal and state governments." *Id.*

---

**20.** This conclusion is borne out by the fact that a number of states signed amicus briefs in sup-

port of the Act. *See supra,* at n. 4.

Similarly, the Court also cannot agree with plaintiff that the ASA compels states to regulate pursuant to a federal policy. Rather, any responsibilities imposed on states under the Act are in the form of encouragement, not coercion. A review of the allegedly improper provisions of the statute is instructive in this regard. First, section 2101 provides that states "have the responsibility for management of a broad range of living and nonliving resources in State waters and submerged lands," including abandoned shipwrecks. Congress sought to make clear that these abandoned shipwrecks be preserved so as to offer recreational and educational opportunities to the public. *See* 43 U.S.C. § 2103(a); *see also* House Report at 374. Thus, Congress declared a policy

> that States carry out their responsibilities under [the Act] to develop appropriate and consistent policies so as to—
>
> (A) protect natural resources and habitat areas;
>
> (B) guarantee recreational exploration of shipwreck sites; and
>
> (C) allow for appropriate public and private sector recovery of shipwrecks consistent with the protection of historical values and environmental integrity of the shipwrecks and the sites.

*Id.* In addition, Congress encouraged states, in managing shipwreck sites, "to create underwater parks or areas to provide additional protection" for these resources. *Id.*[21] To encourage this activity, Congress provided that the Secretary of the Interior shall prepare and publish guidelines which shall seek to

(1) maximize the enhancement of cultural resources;

(2) foster a partnership among sport divers, fishermen, archeologists, salvors, and other interests to manage shipwreck resources of the States and the United States;

(3) facilitate access and utilization by recreational interests;

(4) recognize the interests of individuals and groups engaged in shipwreck discovery and salvage.

*Id.* at § 2104(a). Finally, Congress required that these federal guidelines "shall be available to assist States and the appropriate Federal agencies in developing legislation and regulations to carry out their responsibilities under this chapter." *Id.* at § 2104(c). The House Committee on Merchant Marine and Fisheries noted that although the federal guidelines promulgated pursuant to section 2104(a) would not bind the states, "the Committee strongly encourages the states to act consistently with the guidelines." House Report at 375; *cf.* House Report at 367 (Committee on Interior and Insular Affairs "expects" that states "will review their current legislation and regulations to ensure that they conform" with the Act). Similarly, the guidelines themselves, while encouraging state regulation that is consistent with the Act, expressly state that they do not bind the states. *See* 55 Fed.Reg. 50117, 50120 (1990). They further provide that affected states "are free to adopt the 'Abandoned Shipwreck Act Guidelines' in their entirety, make changes to accommodate the diverse and sometimes unique needs of each State or Federal agency, reject parts as inapplicable, or use alternative approaches." *Id.*

The relevant sections of the ASA and the Act's regulatory guidelines make clear that Congress has not " 'commandee[red] the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program.' " *New York,* — U.S. at —, 112 S.Ct. at 2420 (quoting *Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc.,* 452 U.S. 264, 288, 101 S.Ct. 2352, 2366, 69 L.Ed.2d 1 (1981)). Although Congress clearly expressed its preference that states regulate in accordance with the Act, nothing in the ASA compels the states to do anything. No penalty is imposed if a state refuses to accept title to an abandoned shipwreck or if a state fails to develop a

---

**21.** The Act also provides that "[f]unds available to States from grants from the Historic Preservation Fund shall be available, in accordance with the provisions of title I of the National Historic Preservation Act, for the study, interpretation, protection, and preservation of historic shipwrecks and properties." *Id.*

regulatory program in accordance with the Act. Although the statute repeatedly speaks in terms of state "responsibilities," that is a term of encouragement and not coercion in the ASA. No penalties are imposed on a state that fails to assume and to meet its "responsibilities." Rather, assumption of the "responsibilities" imposed by the ASA is completely voluntary. *See* 55 Fed.Reg. at 50120. Such a voluntary program does not violate the tenth amendment. *See FERC*, 456 U.S. at 765, 102 S.Ct. at 1240–41. Moreover, it would appear that most states are only too happy to assume the "responsibilities" discussed in the Act. If, however, the citizens of a particular state choose not to legislate or to regulate in order to preserve abandoned shipwrecks located on state land, they retain the freedom under the ASA to make that choice. *Cf. New York*, —— U.S. at ——, 112 S.Ct. at 2427. Moreover, the ASA imposes no penalties on the exercise of such a prerogative. As such, the Act offers less of an imposition on the operations of state governments than either of the two incentive programs upheld by the Supreme Court in *New York*. *See* —— U.S. at ——–——, 112 S.Ct. at 2425–27. As a result, the Court holds that the Act does not intrude upon state sovereignty guaranteed by the tenth amendment.

### D. Federal Jurisdiction Under the Act.

▮ Having found that the *Seabird* is an embedded, abandoned shipwreck covered by the ASA and that the Act survives all of plaintiff's constitutional challenges, the Court now must apply the Act to plaintiff's *in rem* complaint. The Court of Appeals explained that "[i]f the ASA applies to this case, and is found constitutional, it is dispositive." *Zych*, 941 F.2d at 528. As discussed above, the Act precludes invocation of the law of finds or the law of salvage as a basis for federal admiralty jurisdiction. The Court of Appeals observed that "[b]ecause these are the only two admiralty causes of action stated in Zych's complaint, ... Zych has simply failed to state a right to relief." *Id.* More precisely, once it has concluded that the ASA applies to the *Seabird* and that the

ASA is constitutional, the Court is without jurisdiction to entertain plaintiff's claims. Rather, title to the *Seabird* and the validity of plaintiff's maritime lien must be adjudicated in Illinois state court. *Id.*

### IV. CONCLUSION

For the foregoing reasons, the Court finds that the *Seabird* is embedded in the submerged lands of the State of Illinois. In addition, the Court holds that the Abandoned Shipwreck Act of 1987 is consistent with the requirements of the United States Constitution. The Act does not improperly remove from federal admiralty jurisdiction a class of cases falling clearly within the scope of that jurisdiction prior to its passage. The Act does not violate principles of substantive due process because the concept of "embeddedness" is rationally related to the statutory purpose of preserving and maintaining historic, abandoned shipwrecks. Finally, the Act also does not represent an unwarranted federal intrusion upon the sovereignty reserved for the states by the tenth amendment. Having found that the *Seabird* is covered by the Act and that the Act is consistent with the Constitution, the Court hereby dismisses plaintiff's case in admiralty without prejudice for lack of jurisdiction.